In re ROGER WILLIAMS BLDG. CORPORATION.

PROVUS BROS., Inc., v. HOLMAN et al.

No. 6541.

Circuit Court of Appeals, Seventh Circuit.

Dec. 2, 1938.

Rehearing Denied Jan. 18, 1939.

Joseph Fisher, of Chicago, Ill., for appellant.

Jacob B. Courshon and Joseph Z. Willner, both of Chicago, for appellees.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

This appeal involves an order of the District Court in proceedings for reorganization of the debtor under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The facts relevant to the order are set forth here, chronologically:

The debtor owned an eighteen story hotel in Chicago, known as the "LaSalle Towers." On February 28, 1929, the debtor issued bonds in the principal sum of $575,-000, secured by first mortgage deed to the trustee therein named upon the real estate in question, and the building thereafter constructed thereon. The bond issue was intended to cover the cost of the construction. Before the building was completed, a default occurred in payment to the contractors and constructors. A bill to foreclose a mechanics' lien was filed on February 19, 1931, in the state court, and other contractors intervened and sought to enforce like liens.

On November 23, 1931, an order was entered in the mechanics' lien proceedings, appointing one Horwich as receiver of the premises with all improvements thereon. He was ordered to take immediate possession with authority to issue receiver's certificates, subject to further order of the court, which should be a first lien upon the premises, and in an amount to be thereafter fixed by the court. The order further provided that the amount of the certificates should be sufficient to pay for the completion of the building and costs of administration, with full power granted to the receiver to enter into contracts to complete the building, and to collect the rents, issues and profits of the premises during the pendency of that action.

A default having occurred in the payment of principal and interest of the bonds, the trustee under the trust deed, on January 12, 1932, filed in the same state court a bill to foreclose it, and later that action was consolidated with the mechanics' lien

actions. At that time there was outstanding of the bonds the principal sum of $563,000.

On February 26, 1932, an order was entered in the mechanics' lien suit authorizing the receiver to enter into a rental purchase contract with appellant for the installation, use and possession of furniture, furnishings, equipment, and the like, at a cost not to exceed $65,459.45, including the cost of carpets, linoleums, and floor coverings in the sum of $18,386.80, "which the said receiver was heretofore authorized to purchase and pay for by the issuance of receiver's certificates." The order further provided that the receiver should pay to appellant a sum equal to fifteen per cent of the gross rents, profits and income derived from the operation of the premises, "for the use and possession of the aforesaid furniture, furnishings, and equipment," beginning after a gross income of $20,000 should be collected, and ending when the aggregate amount so paid should equal the purchase price as provided in appellant's contract, with six per cent interest per annum on past due unpaid amounts.

The order also provided that the receiver might deposit with appellant his receiver's certificates of indebtedness in the aggregate principal sum of $20,000, as additional collateral security for the indebtedness due appellant; that the receiver, however, should not pay interest on the certificates of indebtedness held by appellant so long as he should make payment of the monthly rental to appellant, as provided in the rental purchase contract; that when payment should be made in full to appellant, pursuant to the contract, appellant should execute and deliver to the receiver, or to whomsoever the court might direct, "a warranty bill of sale, transferring and assigning to the said receiver title of all of said furniture, furnishings, carpeting, linoleum and other equipment delivered to and installed upon the premises involved herein pursuant to the authority contained in this order; that until payment shall be made as aforesaid title to said personal property shall not be vested in the receiver." On the same day the identical order was entered in the foreclosure proceedings, and a separate order was entered therein ratifying and adopting the orders in the mechanics' lien cause with respect to the authorization and issuance of the receiver's certificates for the completion of the building.

On the same day these orders were entered, appellant as lessor and Horwich, the state court receiver, as lessee, entered into a rental lease of the personal property here involved. By its terms the lessee agreed to pay to lessor as rental, the purchase price agreed upon, by monthly installments and in the manner as set forth in the court's order of that day. It contained this clause: "To secure the payment of the rentals herein reserved the lessee agrees to and does hereby irrevocably grant to the lessor a first and prior lien on and against the first fifteen per cent of the gross rents, issues, profits and income derived monthly from the aforesaid premises, and the lessee further agrees to, and does hereby deliver, assign and deposit with the lessor, as additional collateral security his receiver's certificates of indebtedness in the aggregate principal sum of twenty thousand dollars * * *."

It further provided that title to the personal property delivered was retained by the lessor, and was not to pass to lessee until the payment of rent, and interest if any, should equal the stipulated purchase price; that in case of default in payment of any rentals reserved the lessor should have the right of immediate repossession, and to retain all moneys theretofore paid by lessee as and for the rental, use and depreciation of the property so delivered.

On April 19, 1932, Horwich resigned as receiver. He was succeeded by one Spencer, who was removed, and he was succeeded by one Weiner on May 15, 1934. The state court ordered Weiner, as receiver, to assume all unpaid contracts and obligations of the prior receivers, after the approval of Spencer's final report, but only to the extent that they be paid out of subsequent net income.

During the pendency of the foreclosure proceedings, on October 24, 1934, the debtor filed a voluntary petition for reorganization under section 77B. On July 5, 1935, the District Court approved its petition as properly filed and appointed Weiner, the state court receiver, as temporary trustee.

On September 9, 1935, at a hearing in the bankruptcy proceedings, an attorney claiming to represent the temporary trustee, though not of record and who later acted as the debtor's attorney, presented a petition to the court on behalf of trustee Weiner, and advised the court that the petition sought the approval of a lease

and rental purchase agreement, dated February 26, 1932, between Horwich as receiver and appellant; that the agreement was for the rental of certain furniture installed in debtor's premises; that the temporary trustee desired to accept that lease and to proceed with its required payments. He said there was no objection to such order and that all parties were in agreement. No evidence relative thereto was submitted, nor was the court advised concerning the making of the lease and rental agreement, or the history of the proceedings in the state court, or as to the value or condition of the leased property. The attorney, however, did advise the court that Weiner had previously been the receiver in the foreclosure proceedings, and as temporary trustee in bankruptcy was in possession of the personal property. The court thereupon, relying upon such statement of counsel, entered an order approving the agreement, and directed Weiner as temporary trustee to accept the rental lease and continue to pay appellant in accordance with its terms. The bondholders' committee was not a party to that proceeding, and had received no notice of it, nor was it represented in court by counsel. Notice was served upon the debtor's counsel, although neither appellant nor its attorneys were parties of record to the proceeding, and appellant's claim had not been filed.

On September 16, 1935, the court appointed one Nixon as permanent trustee. On October 30, 1935, appellant filed its claim for $42,350.46, based upon the lease and rental agreement. It alleged that it was secured by the receiver's certificates in the aggregate amount of $20,000, and that it held a first and prior lien for the entire claim on the first fifteen per cent of the gross rents, issues, profits and income derived monthly from the premises involved, of which sum the several amounts of $4,266.31, $7,475.92 and $1,200 were past due and unpaid.

On May 22, 1936, the court classified the creditors' claims, and placed appellant's claim, with three others of similar character, in Class 7, as a conditional sales contract claim. Appellant, on June 22, 1936, objected to and asked for a modification of the order of classification, because it failed to recognize the alleged priority of appellant's past due claims arising out of the alleged lien on fifteen per cent of the rentals; and because it arbitrarily excluded from Class 3, which included all claims based on receiver's certificates, and other obligations incurred by the state court receiver, the $20,000 in receiver's certificates held by appellant as collateral for its lease and rental agreement. On June 19, 1936, appellant asked for an order of court directing the permanent trustee to comply with the order of September 9, 1935.

On June 24, 1936, the classification, so far as it affected appellant, was vacated by the court, and its claim was referred to a master for hearing as to its validity, amount, classification and priority; and likewise appellant's petition of June 19, 1936, together with any answers thereto, that might be filed subsequently were referred to the same master. To appellant's petition the permanent trustee and the bondholders' committee filed answers, and on July 17, 1936, the permanent trustee filed a petition to vacate the order of September 9, 1935, and for permission to reject the lease and rental purchase agreement. By leave of court appellant answered this petition on July 27, 1936, and the matter was referred to the master.

On March 2, 1937, after a hearing on this issue, the master filed a report adverse to appellant.[1] To this report appellant

---

[1] "I have reached the conclusion that Oscar Weiner, as temporary trustee, by securing the order from this court of September 9, 1935, directing him to accept the lease or rental purchase agreement, did not bind George F. Nixon as permanent trustee, I am also of the opinion that this court, throughout these proceedings, retains jurisdiction over its own orders so that if circumstances justify it, upon a showing, it may vacate any order, entered by it at any time up to the entry of the final decree.

"The question which should have been presented to this court by the petition of Oscar Weiner as temporary trustee was not one of ratification of an executory contract of the debtor. The obligation under the lease and purchase agreement was the obligation only of the state court receiver and his successors. The lessor or vendor under that contract, Provus Brothers, was not a creditor of the debtor corporation at any time. Persons dealing with receivers must look to the income produced by the receivership estate for payment unless they are paid in certificates of indebtedness issued by the receiver. In my opinion, the state court receiver had no power to create any lien

duly filed its objections, and on June 17, 1937, the court overruled them, adopted the master's findings of fact and conclusions of law, approved his report, vacated the order of September 9, 1935, disallowed and expunged appellant's claim, authorized the permanent trustee to permit appellant to reclaim and remove all of its property covered by the lease, and referred the matter to the master for taking testimony upon the value of the use and occupancy of the property by the trustees, and to determine the amount, if any, to be paid appellant for such use and occupancy. The appeal is taken from this order.

It is to be observed that appellant has sought two inconsistent remedies, on two quite inconsistent theories. The first, of October 30, 1935, was based upon the terms of the lease, on the theory that it had been breached and that appellant was entitled to the full amount asserted to be due. Its second contention, of June 19, 1936, was that the permanent trustee should be compelled to carry out the terms of the lease by paying to it monthly, fifteen per cent of the gross rents, issues, profits and income derived from the premises, until the full amount stipulated in the lease should be paid.

■ We find no uncertainty in the order of the state court authorizing the issue of receiver's certificates. The bond issue had proved to be insufficient to complete the construction of the building, and in the order authorizing the issue of the certificates it was definitely stated that its pur-

pose was to provide means for the completion of the building. Of course the court knew that the sums to be derived from the certificates would not be sufficient to pay for the completion of the construction of the building and also for furnishing it when completed. This is obvious from the receiver's petition for authority to complete the construction work, and his subsequent petition for authority to enter into the lease rental contract with appellant for the furnishings. There is nothing ambiguous or uncertain about the terms of the rental lease or the order authorizing it, except in contrast with the order authorizing the issue of the certificates. Both the order authorizing the lease and the lease itself assume that the order authorizing the certificates also authorized the use of the money derived therefrom in furnishing the building. This is not true, and the court was powerless to divert its use for that purpose. We say the state court assumed such unwarranted power, because it attempted to pledge some of the certificates as collateral security for the performance of the lease. What could not be done directly, of course, could not be done indirectly, and such pledge could not be authorized. Appellant in its argument insists that the order of the court authorizing the certificates also authorized the furnishing of the building. We have searched in vain for any such language in the order.

■ Appellant merely possessed a rental lease contract under which it retained title

upon the property of the debtor to pay for the cost of furnishing its building. He could, of course, create liens upon the moneys coming into his possession from rents or other income, and this he sought to do under the contract with Provus Brothers. Beyond that, he had no power to burden the estate of the debtor for the purpose of furnishing its building.

"From the evidence, I find that the furniture and other equipment covered by the lease and rental purchase agreement which was sold to the receiver for the sum of $51,366.98 had a fair value at the time of such sale of $25,000.00. Giving full consideration to the extraordinary risks which were assumed by Provus Brothers in dealing with the state court receiver it may fairly be said that in addition to the interest charged on the deferred payments, a fair amount as additional consideration might be added to what was the fair market value of the merchandise in question, not to exceed,

however, ten per cent. It appears, therefore, that the price charged by Provus Brothers was approximately $23,000.-00 above the fair market value of such merchandise. I do not mean to imply that Provus Brothers did not act in good faith in their negotiations with the state court receiver. Very probably, having in mind the serious legal questions which might be presented, and which possibly might interfere with or defeat their rights to collect for the furniture, Provus Brothers included in the contract price a very substantial sum as additional compensation on account of the extraordinary nature of the transaction.

"I further find that at the present time, giving full effect to the fact which appears in the record that furniture prices have recently increased approximately 15%, furniture of the kind and character covered by the lease agreement can be purchased at the present time in the City of Chicago for $28,000.00."

to the personal property covered by it until the agreed price was paid for by indefinite, but determinable, monthly payments. It was executory in its character, hence subject to rejection by the court. Section 77B(c) (5), 11 U.S.C.A. § 207(c) (5). The contract contained no accelerating clause whereby all would become due in case of default of any payment, but it reserved the right of repossession by appellant in such event. It must be borne in mind that the contract was not entered into by the debtor but by appellant and the state court receiver. It created a cost of administration by the state court which that court through its receiver was obligated to care for out of a certain per cent of the gross proceeds, if sufficient. It created no lien on the realty, nor was it a personal obligation of the debtor. The personal property covered by the lease constituted no part of the debtor's estate at any time in question, although it was in the possession of the state court receiver by the terms of the lease, and afterwards came into possession of the permanent trustee in bankruptcy. It is clear under these circumstances that the unpaid portion of the agreed purchase price was not due when appellant's claim was filed, nor has it since become due, nor could it be allowed as a preferred or a general claim against the estate. No doubt appellant would be entitled to any unpaid portions of fifteen per cent of the gross income of the debtor's property, if any, up to the time the bankruptcy court took possession, and it would also be entitled to fair compensation for the use of such personal property, if any, during that possession. These rights we understand the court to have conceded. The only other relief open to appellant is repossession. This right the court has not only conceded, but has asked appellant to exercise it without legal procedure. We are convinced that none of these rights are such as to warrant a special classification different from that accorded by the court. Otherwise it would no doubt place in appellant's hands a weapon to greatly endanger or defeat the acceptance of any plan of reorganization.

■ Appellant stresses its contention that the bankruptcy court has no power to disturb the orders of the state court. Such orders here involved were purely administrative orders, and one was exercised without authority. There is a plenitude of power in the bankruptcy court to review those orders (section 77B (i), 11 U.S.C.A. § 207 (i)), and to make such orders itself as it may deem equitable for the protection of obligations incurred by the receiver or prior trustee.

■■ Appellant further contends that the bankruptcy court had no authority to abrogate the lease rental contract because it had formerly approved it and authorized its continuance at the request of the temporary trustee, who was formerly the state court receiver. There is no merit in this contention. In aid of creditors and even of the debtor, the bankruptcy court may always alter its administrative decrees, where as here, no intervening rights of innocent parties have been, or are likely to be materially interfered with.

■ Appellant was placed in no worse position than formerly, except that it was not permitted to continue its rental contract with the permanent trustee, which it had made with the state court receiver. That officer, even with the state court approval, had no right to bind the bankruptcy trustee by its lease of personalty, if the bankruptcy court did not choose to continue it. Obviously to have continued the lease would have placed a burden upon the realty which neither the debtor nor its creditors had ever consented to, and which both, through the permanent trustee and the bondholders' committee, were opposing. The grounds for these objections were sound, both legally and financially. To have continued the contract would have interfered greatly with the reorganization of the debtor or sale of the realty, with no assurance that appellant would not demand repossession upon a subsequent default. Moreover the amount demanded by appellant, as set forth in the lease, was out of all proportion to the value of the property either at the time of the sale, or subsequent thereto. This fact convinces us that appellant, at the time the lease was entered into, fully realized the uncertainty of its duration, and the risk pertaining to the venture, and that its views pertaining to its rights then coincided with those we now express. To conclude otherwise would be to attribute to it questionable motives.

■ The burden cast upon the bankruptcy court by sub-section (i) section 77B, was to make such orders as it might deem equitable for the protection of obligations incurred by the receiver or prior trustee, and

for the payment of such reasonable administrative expenses and allowances in the prior proceeding as may have been fixed by the court appointing such trustee or receiver. In the performance of that duty we find no error.

The order is affirmed.