GRAMIL WEAVING CORP. v. RAINDEER FABRICS, Inc.

No. 38, Docket 21708.

United States Court of Appeals Second Circuit.

Argued Nov. 1, 1950.

Decided Dec. 7, 1950.

538

Gettinger & Gettinger, New York City, for appellant; Edward Gettinger and Samuel W. Sherman, New York City, of counsel.

Frederick E. M. Ballon, New York City, for appellee; Irving L. Golomb, Melvin Leibowitz, New York City, of counsel.

Before L. HAND, SWAN and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal by a judgment creditor of Raindeer Fabrics, Inc., debtor in possession, from an order of the district court confirming an order of the referee which dismissed on the merits a petition of the creditor that its secured and unsecured claim be determined pursuant to section 57, sub. h of the Act.[1] The principal contention upon the appeal is that the referee lacked jurisdiction to dismiss the claim on the merits.

The facts are somewhat involved. An involuntary petition in bankruptcy was filed against Raindeer Fabrics, Inc., on April 22, 1949 by a creditor other than the appellant. On May 18, 1949 the alleged bankrupt filed therein a petition for an arrangement with its unsecured creditors pursuant to Chapter XI of the Act.[2] Prior to the bankruptcy Gramil Weaving Corp., the appellant, had obtained in a New York court a judgment against Raindeer Fabrics, Inc. for $11,750.04 for goods sold and delivered to it. The following day, December 29, 1948 the judgment creditor caused an attachment in a suit brought by it in a Massachusetts court to be served on Newport Finishing Corporation which was in possession of part of the merchandise on the sale of which the attaching creditor's judgment was based. In the Massachusetts suit Newport Finishing Corporation set up a lien for storage charges and attorney's fees, and a New York partnership named Hilma Fabrics, as an adverse claimant, asserted that it had purchased the merchandise from Raindeer Fabrics, Inc. on December 10, 1948. Raindeer itself defaulted in the Massachusetts suit, but got from the New York court a stay of enforcement of the judgment obtained by the appellant. This stay was vacated on May 12, 1949 but in the meantime, the creditor which had filed the bankruptcy petition against Raindeer obtained from the bankruptcy court an *ex parte* stay of proceedings in the Massachusetts attachment suit. So matters stood when the appellant filed in the bankruptcy court its amended petition on December 14, 1949. This petition alleged the petitioner's judgment in New York and attachment in Massachusetts, asserted that the sale of the merchandise under attachment would not realize enough money to pay the judgment, and asked the referee in bankruptcy to ascertain the value of the security, either by sale under the attachment or by sale controlled by the bankruptcy court, and to permit the petitioner to object to the arrangement, if it shall so desire to do, with respect to its unsecured claim. Service of the amended petition was had upon the debtor, and service was attempted to be made upon Hilma Fabrics by serving a person in charge of the office of said partnership. Hilma Fabrics did not appear or answer. The debtor's answer denied that the petitioner was a se-

1.  11 U.S.C.A. § 93, sub. h.

2.  11 U.S.C.A. § 701 et seq.

cured creditor, and alleged that the debtor was insolvent on the date of the attachment.[3] At the hearings no evidence was presented with respect to the insolvency of the debtor but Raindeer's president, who was called as a witness by the petitioner, testified that on December 10, 1948 Raindeer sold the merchandise to Hilma Fabrics for $4,351.71 and had notified Newport Finishing Corporation to hold it subject to Hilma's order. This testimony was corroborated by invoices to Hilma and a letter to Newport Finishing Corporation. It also appeared that the debtor's schedules listed the account owed by Hilma, not the merchandise in Newport's possession, as assets. The referee found as a fact that the sale was made and the goods appropriated to Hilma on December 10, 1948 and as a conclusion of law that the petitioner was not a secured creditor. He dismissed the petition on the merits.

By statutory definiton, section 1 (28),[4] a "secured creditor" is one "who has security for his debt upon the property of the bankrupt of a nature to be assignable under this Act. * * *" Hence it necessarily follows that the appellant was not a secured creditor if Raindeer had transferred its title by a valid sale prior to Gramil's attachment of the goods.[5] The bankruptcy court is specifically given jurisdiction to allow or disallow claims of creditors, section 2, sub. a (2),[6] and the enumeration of specific powers does not deprive it of any power it may otherwise possess, section 2, sub. b.[7] Section 57, sub. h,[8] quoted in full in the margin,[9] provides that "The value of securities held by secured creditors shall be determined * * * by agreement * * * or litigation, as the court may direct," and the amount of such value credited upon the claim. Since the court had jurisdiction of the subject matter under sections 2, sub. a (2) and 57, sub. h and acquired jurisdiction of the person by virtue of Gramil's petition, it necessarily had power to decide all issues raised. By invoking the court's jurisdiction Gramil not only consented to an initial determination of the validity of its claim, but it also submitted itself "to the court's jurisdiction in respect of all defenses that might be made" to the claim.[10] This latter submission necessarily included the defense that the claim was unsecured by reason of the fact that title had passed to Hilma before the goods were attached.[11] Although that defense was not pleaded in the debtor's answer, it was raised by the evidence.

It is suggested that the only defense the bankruptcy court could have considered was one interposed under section 67, sub.

3. As the attachment on December 29, 1948 was less than four months before the date of the filing of the bankruptcy petition, the attaching creditor's lien would be void if insolvency were proved. Section 67, sub. a of the Act, 11 U.S.C.A. § 107, sub. a.

4. 11 U.S.C.A. § 1(28).

5. Matter of Educational Pictures, D.C., 34 F.Supp. 807, affirmed Fromberg v. Davidson, 2 Cir., 117 F.2d 739; 1 Collier on Bankruptcy, 14th ed. page 90.

6. 11 U.S.C.A. § 11, sub. a(2).

7. 11 U.S.C.A. § 11, sub. b.

8. 11 U.S.C.A. § 93, sub. h.

9. "Section 93. Proof and allowance of claims * * *
   "(h) The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors, or by such creditors and the trustee by agreement, arbitration, compromise or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance. Such determination shall be under the supervision and control of the court."

10. Alexander v. Hillman, 296 U.S. 222, 238, 56 S.Ct. 204, 209, 80 L.Ed. 192.

11. Appellant cites dicta in In re Chakos, 7 Cir., 24 F.2d 482, 485, in support of its position that the referee, having found title in someone other than the bankrupt, thereupon lost jurisdiction to dismiss the creditor's petition on the merits. The Chakos case is inapposite; in that case the creditor invoked the bankruptcy court's jurisdiction merely to settle a claim against a stranger to the bankruptcy proceeding.

a.[12] Section 67, sub. a provides that a bankruptcy court shall have summary jurisdiction of any proceeding by the trustee or debtor to declare void liens against property of the bankrupt which have been obtained within four months of bankruptcy, in fraud of the Bankruptcy Act or during the debtor's insolvency. Appellant presupposes that section 67, sub. a, provides the exclusive mode of adjudicating the present claim and that the bankruptcy court must have invalidated the lien under that provision or not at all. This argument overlooks the fact that section 67, sub. a provides for summary jurisdiction in proceedings by the trustee or debtor, and that in the present case the proceeding was brought by the creditor itself. Having invoked the court's jurisdiction for the purpose of having his secured claim evaluated, we do not think that the creditor can be heard to say after decision has gone against him that the court did not have jurisdiction to decide all matters relative to evaluating the claim, including the question whether the alleged security was on property of the bankrupt.[13]

That is not to say, however, that in the circumstances of the present case it was proper for the referee to decide the title question and dismiss the petition. Although the bankruptcy court has jurisdiction, it may, in the exercise of a proper discretion, decline to exercise it if the best interests of the estate and of all interested parties would be better served by permitting an issue to be litigated in a state court.[14] In the case at bar we think that the title controversy could best be litigated in the Massachusetts court, where the claims of Hilma Fabrics and Newport Finishing Corporation, as well as of Gramil and the debtor in possession, can be determined in a litigation which will bind them all. Moreover Gramil has suggested that under the Massachusetts law its attachment may reach the unpaid purchase price which Hilma owes the debtor in possession for the alleged sale. Although Raindeer defaulted in the Massachusetts suit, this will not preclude the debtor in possession. A debtor in possession is a fiduciary analogous to a trustee in bankruptcy.[15] Section 11, sub. b.[16] gives the bankruptcy court specific authority to direct a trustee to defend any pending suit, and we think that in the present case the court should direct the debtor in possession to do so. Furthermore, the appellant's petition asserted a claim as an unsecured creditor in so far as its judgment for $11,750.04 exceeded the value of its security by some $7,000. Under section 57, sub. e[17] the unsecured claim should be temporarily allowed.

The order is reversed and the cause remanded for further proceedings in conformity herewith.

12. 11 U.S.C.A. § 107, sub. a.

13. See Hyman v. McLendon, 4 Cir., 140 F. 2d 76, certiorari denied 322 U.S. 739, 64 S.Ct. 1055, 88 L.Ed. 1572; Hirsch v. Morton, 3 Cir., 13 F.2d 701; People's Nat'l Bank of Strasburg v. Green, 4 Cir., 296 F. 294, 297; 2 Collier on Bankruptcy, 14th ed., Par. 23.08(5).

We are not unmindful of Cline v. Kaplan, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97, which held that, absent actual or constructive possession of the property in controversy, the bankruptcy court cannot retain summary jurisdiction in trustee-initiated proceedings against one with a substantial adverse claim if, although participating in the proceeding, the claimant makes timely objection to jurisdiction. We do not, however, interpret that case to go so far as to hold that a claimant who has himself invoked summary jurisdiction may, after waiting until decision has gone against him, withdraw his consent before entry of a formal order. Honeyman v. Hughes, 9 Cir., 156 F.2d 27, 29, certiorari denied 329 U.S. 739, 67 S.Ct. 99, 91 L.Ed. 638; cf. 2 Collier on Bankruptcy, 14th ed., 1949 Supp., page 79.

14. See Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 483, 60 S.Ct. 628, 84 L.Ed. 876; Mangus v. Miller, 317 U.S. 178, 186, 63 S.Ct. 182, 87 L.Ed. 169.

15. 8 Collier on Bankruptcy, 14th ed., pages 800–3; In re Martin Custom Made Tires Corp., 2 Cir., 108 F.2d 172; Urban Prop. Corp. v. Benson, Inc., 9 Cir., 116 F.2d 321.

16. 11 U.S.C.A. § 29, sub. b.

17. 11 U.S.C.A. § 93, sub. e.