In re Richard H. M. MAIDMAN, not Individually but as Trustee under that certain land trust agreement dated December 19, 1975, known as "Trust Number 2", Debtor.

No. 79 B 043.

United States District Court,
S. D. New York.

Feb. 23, 1979.

Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, for debtor; Richard Lieb, Laurence J. Kaiser, New York City, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for Jomar; Marc S. Kirschner, New York City, of counsel.

## MEMORANDUM DECISION

GAGLIARDI, District Judge.

This is an expedited appeal from an order entered on January 16, 1979 by the Bankruptcy Judge (Lewittes, J.) in proceedings for a real property arrangement pursuant to Chapter XII of the Bankruptcy Act, 11 U.S.C. §§ 801–926. Richard M.H. Maidman, as Trustee under a land trust agreement dated December 19, 1975 (the "Debtor"), challenges that portion of the Bankruptcy Judge's order requiring that the Debtor's possession of his property be subject to a lease between a state foreclosure receiver, as lessor, and Jomar Hotel Corporation ("Jomar"), as lessee. For the reasons set forth below, the order of January 16, 1979 is affirmed in part and reversed in part, and the case is remanded to the Bankruptcy Judge for further proceedings.

### Statement of Facts

As no findings of fact were made by the Bankruptcy Judge, this statement of facts is necessarily drawn from the affidavits and memoranda of law submitted by the parties and the transcript of the oral argument before the Bankruptcy Judge.

The Debtor, as trustee under a land trust agreement, has various property interests in oceanfront hotel property in Miami Beach, Florida. These property interests include: 1) a lessee's interest in a long-term ground lease of 5.5 acres of land; 2) the fee interest in the Barcelona and International Hotel complexes situated on that land; 3) the lessor's interest in the lease of the two hotels; and 4) the sublessor's interest in the sublease of the land. The Debtor owes approximately $4.75 million to nine separate creditors, the largest of which is the first mortgagee, the Barnett Winston Investment Trust ("BWIT"). In January 1978, BWIT commenced a foreclosure action against the Debtor and others in Florida state court and, on January 24, 1978, that court appointed a receiver to take possession of the Debtor's property and to operate his business.

On December 19, 1978, after a hearing and with the Florida court's approval, the receiver entered into a short-term lease of the Barcelona Hotel's north building with Jomar. The lease calls for Jomar to pay $210,000 rent in monthly installments of varying amounts until its termination on April 29, 1980.

On January 9, 1979, the Debtor filed his petition for a Chapter XII arrangement with this court. The Bankruptcy Judge entered an order permitting the Debtor to regain possession of its property and enjoining all persons from interfering with the Debtor's possession. On Jomar's subsequent oral application, however, the Bankruptcy Judge issued an amended order on January 11th providing that the Debtor's continued possession was "subject to all existing leases" but that the Debtor retained the right to move to reject any executory contracts. No appeal was taken from this order.

When the Debtor allegedly interfered with Jomar's access to the premises, Jomar moved for the issuance of a certificate of contempt. The Debtor cross-moved to dismiss the application on the grounds that the filing of a Chapter XII petition nullified the lease between Jomar and the state foreclosure receiver and that Jomar had failed to satisfy certain conditions precedent to the lease as required by the Florida court at the hearing on approval of the lease. No testimony was taken on the respective motions, but the Bankruptcy Judge heard oral argument on the question of the lease's continued validity in light of the initiation of the Chapter XII case. By order dated January 16, 1979, the Bankruptcy Judge denied the parties' motions, amended his order of January 9th to provide that the Debtor's possession was subject to the lease between the receiver and Jomar, and ordered the Debtor not to interfere with Jomar's right to immediate possession of the property without prejudice to the Debtor's pursuit of any claim for breach of the lease in a court of competent jurisdiction. The Debtor applied to the Bankruptcy Judge for a stay of the order pending an appeal. In his memorandum decision of January 16th, the Bankruptcy Judge expressly rejected the Debtor's theory that the lease became a nullity upon the filing of the Chapter XII petition and denied the request for a stay. The instant appeal followed.[1]

The Debtor challenges the order below on the grounds that the relief granted is contrary to the express provisions of §§ 506–08 of the Bankruptcy Act and is both outside the scope of the proceeding below and without support in the record. The Debtor also objects to that portion of the order which requires him to litigate the issue of Jomar's alleged breach of the lease in a court of competent jurisdiction rather than in the Bankruptcy Court.

*Discussion*

A. *The Procedural Requirements of the Bankruptcy Rules*

The sole issue presented by Jomar's application of January 12, 1979 was whether the Debtor was in contempt of the Bankruptcy

1. On January 16, 1979, the parties appeared before the court on the Debtor's application for a stay pending an appeal from the order below. The motion for a stay was subsequently withdrawn and the parties agreed to submit this appeal to the court on an expedited basis.

Judge's order of the previous day by denying Jomar access to the leased premises. The Bankruptcy Judge's order of January 16, 1979, however, not only ruled on the pending motion but also determined that Jomar had rights in the property and ordered the Debtor not to deny possession to Jomar.

Bankruptcy Rule 12–60 states in pertinent part:

> Part VII of the Bankruptcy Rules shall govern any proceeding instituted by a party before a bankruptcy judge in a Chapter XII case to (1) recover money or property other than a proceeding under Rule 12–29 or Rule 12–50, (2) determine the validity, priority, or extent of a lien or other interest in property, . . . [or] (4) obtain an injunction . . . . Such a proceeding shall be known as an adversary proceeding.

The procedure governing adversary proceedings pursuant to Part VII of the Bankruptcy Rules is modeled after the Federal Rules of Civil Procedure. Thus, before a Bankruptcy Judge may declare a party's rights in property, a complaint must be filed, process served, an answer or motion interposed, discovery conducted, a hearing held and, except for decisions on motions, findings of fact and conclusions of law made. Similarly, an injunction against interference with a party's property rights cannot issue unless the procedures in Bankruptcy Rule 765 are followed. These requirements are not altered by the fact that the issue raised by the parties is a "legal", rather than a "factual" one. "[T]he Bankruptcy Court's powers, however broad, must be exercised in accordance with the procedural requirements of the Bankruptcy Act and Rules." *In re Chanticleer Associates Ltd.,* 592 F.2d 70, at 74 (2d Cir. 1979). Because the required procedures were not followed here, that portion of the order of January 16, 1979 that purports to declare the extent of Jomar's rights in the property and to restrain the Debtor from interfering with Jomar's possession exceeded the Bankruptcy Court's statutory authority and must be reversed.

The order of January 11, 1979, however, has not been appealed from and that order provides that the Debtor's possession remains subject to "all existing leases." As such, the reversal of the January 16, 1979 order on procedural grounds has little practical effect on the rights of the parties, and the principal substantive issue raised by this appeal—the continued validity of the lease entered into by the foreclosure receiver—will undoubtedly arise once again in future proceedings before the Bankruptcy Judge. In the interest of judicial economy, therefore, the court will address that issue.

*B. Chapter XII and Prior Mortgage Foreclosure Proceedings*

Chapter XII of the Bankruptcy Act, enacted in 1938 as part of the Chandler Act, permits the rehabilitation of financially embarrassed non-corporate debtors. *In re Colonial Realty Investment Co.,* 516 F.2d 154, 157 (1st Cir. 1975). An arrangement under Chapter XII must "include provisions modifying or altering the rights of creditors who hold debts secured by real property or a chattel real of a debtor." 11 U.S.C. § 861(1). The Bankruptcy Court is vested with "exclusive jurisdiction of the debtor and his property, wherever located." *Id.* § 811. Prior to the enactment of Chapter XII, the Bankruptcy Court presiding over the reorganization of a debtor pursuant to former § 77B of the Bankruptcy Act lacked the power to displace a receiver appointed in a foreclosure proceeding, *Duparquet, Huot & Moneuse Co. v. Evans,* 297 U.S. 216, 56 S.Ct. 248, 80 L.Ed. 402 (1936), or the mortgagee himself. *Tuttle v. Harris,* 297 U.S. 225, 56 S.Ct. 416, 80 L.Ed. 654 (1936). Congress remedied this deficiency by enacting §§ 506–08 of the Bankruptcy Act, 11 U.S.C. §§ 906–08. *See Emil v. Hanley,* 318 U.S. 515, 522 & n. 7, 63 S.Ct. 687, 87 L.Ed. 954 (1943); *In re Maier Brewing Co.,* 38 F.Supp. 806, 813–17 (S.D.Cal.1941); 6A *Collier on Bankruptcy* ¶ 14.03 (1977 ed.) (discussing analogous provisions of Chapter X, 11 U.S.C. §§ 656–58).

Section 506 provides that a debtor may file a Chapter XII petition notwithstanding the pendency of a prior mortgage foreclo-

sure proceeding in which a receiver has been appointed. Moreover, § 507 states:

Such prior proceeding shall be stayed by the filing of a petition under this chapter. The trustee appointed under this chapter, upon his qualification, or, if a debtor is continued in possession, the debtor, shall become vested with the rights if any, of such prior receiver or trustee in such property and with the right to the immediate possession thereof. The trustee or debtor in possession shall also have the right to immediate possession of all real property and chattels real of the debtor in the possession of a trustee under a trust deed or a mortgagee under a mortgage.

11 U.S.C. § 907. The Bankruptcy Court is empowered to make whatever provision it deems equitable for the protection of the obligations of the superseded foreclosure receiver. 11 U.S.C. § 908. "[T]hese words express the grand scheme of Chapter XII that prior defaults notwithstanding, a debtor in possession should retain and operate its mortgaged property and any funds flowing from the implementation of its statutory rights." *In the Matter of Lynne Associates,* 15 Collier's Bankruptcy Cases 343, 345 (S.D.N.Y.1977). "The power to prevent secured parties from availing themselves of their contractual remedies upon default, and to compel those creditors who have acted with sufficient celerity to be in possession at the time of filing to return the debtor's property is essential to preserve the possibility of a successful rearrangement of the debtor's affairs." *In re Colonial Realty Investment Co., supra,* 516 F.2d at 158.

■■■ The Debtor argues, however, that § 507, by vesting him with the "right to

immediate possession" of the property, nullifies the lease between the receiver and Jomar. The court cannot construe the statute to require this result. Section 507 is designed to permit a debtor-in-possession to operate its business for the benefit of all parties with an interest in the estate and to prevent a single creditor, or foreclosure receiver, from diverting rental income or the proceeds from a foreclosure sale to a single creditor's use. Once foreclosure is stayed and the debtor-in-possession is vested with the right to receive rents under existing leases, no one creditor enjoys an advantage over any other and the debtor can conduct his business for the benefit of all.[2]

■■■ None of the cases upon which the Debtor relies construes § 507 or its pre-1938 predecessors to nullify leases entered into by foreclosure receivers in proceedings superseded by federal reorganization. In *In re Roger Williams Building Corp.,* 99 F.2d 212 (7th Cir. 1938), *cert. denied,* 307 U.S. 635, 59 S.Ct. 1032, 83 L.Ed. 1517 (1939), the Court of Appeals for the Seventh Circuit affirmed orders below permitting a federal reorganization trustee to reject a lease of personal property entered into by a state court receiver as lessee. The Court did *not* hold that former § 77B(i), which vested the trustee with "possession of and . . . title to [the] property" operated to nullify the lease. Rather, the court held that the receiver "even with the state court's approval, had no right to bind the bankruptcy trustee by its lease of personalty, if the bankruptcy court did not choose to continue it." *Id.* at 217.[3] This discretionary power to terminate a lease entered into by the superseded foreclosure receiver is akin to the discretion enjoyed by the Bankruptcy

2. Several courts have recognized the debtor-in possession's right to receive rents under leases entered into by the debtor prior to foreclosure. *In re Colonial Realty Investment Co., supra,* 516 F.2d at 158; *In re Franklin Garden Apartments,* 124 F.2d 451, 453–54 (2d Cir. 1941) (Chapter X case); *In the Matter of Carousel Limited Partnership,* 14 *Collier's Bankruptcy Cases* 521, 523–25 (N.D.Ga.1977). In none of these cases has the court even intimated that § 507's grant of the "right to immediate possession" included the right to evict lessees. The

court fails to see why the statutory "right to immediate possession" confers any greater power upon a debtor when the foreclosure receiver has entered into the lease than when the debtor himself has done so.

3. *See also In re East Delaware Place Building Corp.,* 76 F.2d 834 (7th Cir. 1935) (where lease of real property between state court receiver as lessor and another party as lessee provided for its termination at the end of the receivership, bankruptcy court may, as a matter of *discretion,* order immediate transfer of the property).

Court to permit the Chapter XII debtor to reject leases which he entered into himself prior to the filing of his petition. 6 *Collier, supra,* ¶ 3.23[8], at 595 (1978 ed.). Section 413(1) of the Bankruptcy Act "permit[s] the rejection of executory contracts of the debtor" prior to the court's confirmation of the plan, 11 U.S.C. § 813(1), and § 461(4) permits a Chapter XII plan to "provide for the rejection of any executory contract." 11 U.S.C. § 861(4). Executory contracts are defined in § 406(4) to include "unexpired leases of real property." 11 U.S.C. § 806(4). Under these provisions, however, the Chapter XII debtor cannot reject a lease as a matter of right; permission to reject lies in the discretion of the Bankruptcy Court. *In re Flying Airways, Inc.,* 328 F.Supp. 1256, 1258 (E.D.Pa.1971) (Chapter X case); 9 *Collier, supra,* ¶ 3.03 at 799 (1978 ed.).

██ The Bankruptcy Judge has not yet been called upon to exercise his discretion to terminate the lease between the receiver and Jomar. The Debtor has not moved to reject the lease as the Bankruptcy Judge's order of January 11th expressly permitted him to do. Since this court concludes that § 507 does not render the lease null and void, the issue of whether the lease ought nevertheless to be terminated is one properly addressed to the discretion of the Bankruptcy Judge.

██ Jomar contends that § 70b of the Bankruptcy Act prevents the Debtor and the Bankruptcy Judge from depriving Jomar of possession of the leased premises. Section 70b states in pertinent part that: "Unless a lease of real property shall expressly otherwise provide a rejection of such lease or any covenant therein by the trustee of the lessor shall not deprive the lessee of his estate." 11 U.S.C. § 110(b). The meaning of this provision, commonly called the "savings clause", has been a matter of great debate, but the prevailing view among courts and commentators is that the lessee's "estate" which is protected is his right to possession as well as all covenants

running with the land in his favor. *In the Matter of Penn Central Transportation Co.,* 458 F.Supp. 1346, 1355 (E.D.Pa.1978); *see In re New York Investor's Mutual Group,* 153 F.Supp. 772, 775 (S.D.N.Y.1957), *aff'd sub. nom. Cohen v. East Netherland Holding Co.,* 258 F.2d 14 (2d Cir. 1958).

██ Whether or not the § 70b "savings clause" applies to Chapter XII proceedings is also an unsettled area of the law. The provisions of Chapters I to VII of the Bankruptcy Act, including § 70b, apply to Chapter XII proceedings "insofar as they are not inconsistent or in conflict" with the provisions of Chapter XII. 11 U.S.C. § 802. *See Finn v. Meighan,* 325 U.S. 300, 65 S.Ct. 1147, 89 L.Ed. 1624 (1945) (holding another portion of § 70b to be applicable to Chapter X proceedings). The sole court to consider the question concluded that the "savings clause" was inapplicable to Chapter XII proceedings because permitting a tenant to remain in possession will often defeat the Chapter's purpose of effecting an arrangement. *In re Freeman,* 49 F.Supp. 163, 165 (S.D.Ga.1943). Several commentators, however, have been highly critical of the *Freeman* decision. *See, e. g.,* 6 Collier, *supra,* ¶ 3.24, at 601–03 (1978 ed.); Creedon & Zinman, *Landlord's Bankruptcy: Laissez Les Lessees,* 26 Business Lawyer 1391, 1429–31 (1971); Silverstein, *Rejection of Executory Contracts in Bankruptcy & Reorganization,* 31 U.Chi.L.Rev. 467, 496–97 (1964). Even if the "savings clause" applies to Chapter XII proceedings in which the debtor-lessor seeks to reject a lease which he entered into himself, it by no means follows that the clause bars the deprivation of a lessee's estate when, as here, the lessor was a foreclosure receiver. The "savings clause" was intended by Congress to serve as an "equitable safeguard for an innocent party who had based his affairs on the term provided in the lease." 4A *Collier, supra,* ¶ 70.44 at 541–42 (1978 ed.). The expectations of a party dealing with a foreclosure receiver arguably do not merit similar protection.[4]

---

4. Indeed, Article XII of the lease recites the parties' understanding that the lease was subject to the state foreclosure action and that the parties were to be bound by any court order rendered in that action. Thus, it might be inferred that Jomar was aware of the possibility of a court order terminating the lease.

The court notes these unsettled issues only for the purpose of alerting both counsel and the Bankruptcy Judge to them. The resolution of these difficult questions need not be attempted now; it rests with the Bankruptcy Judge in the first instance should the Debtor move to reject the lease.

### C. The Deferral of Issues Concerning Breach of the Lease to a Court of Competent Jurisdiction

The Debtor also challenges that portion of the Bankruptcy Judge's order which defers to a court of competent jurisdiction as to issues of state law concerning Jomar's performance under the provisions of the lease. At the oral argument on the motion for a certificate of contempt, the Debtor sought unsuccessfully to introduce evidence of Jomar's failure to satisfy certain alleged conditions precedent to the receiver's obligations under the lease. The court concludes that the Bankruptcy Judge did not err in declining to address this issue.

 Reorganization courts lack the jurisdiction to dispossess lessees by means of a summary proceeding.

> While it is well settled that a bankruptcy court may summarily adjudicate controversies involving property claimed to be a part of the bankrupt's estate which is in the actual or constructive possession of the bankrupt, *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940), . . . a lessee in possession under a valid lease cannot normally be ousted save by a plenary suit in the reorganization court or in the state courts unless he consents to the exercise of the bankruptcy court's summary jurisdiction.

*Foodtown of Oyster Bay, Inc. v. Dilbert's Leasing & Development Corp.*, 334 F.2d 768, 769 (2d Cir. 1964); *In re Mt. Forest Fur Farms of America, Inc.*, 122 F.2d 232, 238–39 (6th Cir. 1941), *cert. denied*, 314 U.S. 701, 62 S.Ct. 480, 86 L.Ed. 561 (1942); 8 *Collier*, *supra*, ¶ 3.02 at 159 n. 4 (1978 ed.). *Contra*,

*In re Freeman, supra*, 49 F.Supp. at 165. Even if Jomar's motion for a certificate of contempt were deemed to be a sufficient invocation of the Bankruptcy Court's jurisdiction to constitute consent to the exercise of summary jurisdiction, *cf. Foodtown of Oyster Bay, Inc. v. Dilbert's Leasing & Development Corporation, supra*, 334 F.2d at 770, the Bankruptcy Court "may, in the exercise of a proper discretion, decline to exercise [such jurisdiction] if the best interests of the estate and of all interested parties would be better served by permitting an issue to be litigated in a state court." *Gramil Weaving Corp. v. Raindeer Fabrics, Inc.*, 185 F.2d 537, 540 (2d Cir. 1950). The conditions precedent which Jomar has allegedly failed to satisfy were established by the Florida court at the hearing on the approval of the lease and that court is obviously in a better position than the Bankruptcy Judge to interpret the meaning of its own order. Under the circumstances, the Bankruptcy Judge's deferral to the state court did not constitute an abuse of discretion.

### Conclusion

Insofar as the order of January 16, 1979 purported to declare Jomar's rights in the property and to enjoin the Debtor from interference therewith, it is reversed and the case is remanded to the Bankruptcy Judge for further proceedings. In all other respects, the order is affirmed.

So Ordered.