In the Matter of JEWEL TERRACE CORP., Debtor.

JEWEL TERRACE CORP., Plaintiff,

v.

KEW GARDENS TENANTS LEAGUE, Defendant.

Bankruptcy No. 180–00347.

United States Bankruptcy Court, E. D. New York.

Feb. 13, 1980.

Louis P. Rosenberg, Brooklyn, N.Y., for debtor-plaintiff.

Creditor & Paroff, by Richard M. Creditor, Forest Hills, N.Y., for Kew Gardens Tenants League—defendant.

Cadwalader, Wickersham & Taft, by Terence F. Gilheany and Valerie Asciutto, New York City, of counsel, for Bowery Savings Bank.

Bachner, Tally & Mantell, by Sol V. Slotnik, New York City, for Nathan Schneider.

George Mehlman, Officer of D.I.P. Corp.

## DECISION AND ORDER ON ADVERSARY PROCEEDING BY DEBTOR AGAINST TENANTS LEAGUE FOR TURNOVER OF RENTS, ACCOUNTING AND INJUNCTION, ETC.

JOSEPH V. COSTA, Bankruptcy Judge.

### PRELIMINARY STATEMENT

An adversary proceeding has been commenced by Jewel Terrace Corp., the debtor-in-possession ("the debtor") against Kew Gardens Tenants League ("the League") seeking an order requiring the League to surrender all rent monies collected from the tenants of the apartment complex owned by the debtor, an accounting of all receipts and disbursements of rent collected by the League and an order enjoining the League from interfering with the administration of the debtor's estate. The League interposed an answer setting forth the history of a tenants' strike which commenced under the aegis of a state housing court to which the League has been periodically accounting.

The League asserts that the management (now the debtor) requested the League to pay certain bills out of rents collected. The answer requested that this court grant affirmative relief by appointment of a receiver.

After issue was joined, a pre-trial hearing was held on February 7, 1980, at which time the following facts were placed on the record through argument of counsel:

In October, 1979, the debtor acquired a leasehold interest in the apartment complex in question, consisting of 19 garden apartments containing 750 apartments and 196 garages. Prior thereto, the premises were owned by City Partners, Ltd. ("City" or "Gutterman" the principal owner and manager of the apartment complex) who allegedly failed to properly maintain the apartments. City had filed a Chapter XII petition before Bankruptcy Judge Boris Radoyevich which was dismissed in mid-1979. A tenants' rent strike had been commenced and an Article 7 proceeding under the Real Property Law of New York was instituted in May, 1979, by the tenants against City, in the Civil Court of the State of New York, Housing Part. Under the supervision of Judge John Milano of that court, a series of negotiations and agreements were entered into between City by Gutterman and the Tenants' League with respect to the collection of rents and the maintenance and repair of the apartments. City through Gutterman had not fulfilled its agreement when it conveyed the leasehold to the debtor, a corporate entity owned and controlled by George Mehlman ("Mehlman") shortly after dismissal of the Chapter XII case. At the time the debtor took title for and on behalf of Mehlman, the latter was aware of the tenants' strike, the existence and activity of the League, the failure of his predecessor Gutterman, to perform his responsibilities as landlord, the default in payments to the first mortgagee, the pendency of the tenant proceeding in the State Housing Court and its supervision over the League by Judge Milano. That proceeding is still pending.

On January 28, 1980, the debtor filed a voluntary petition under Chapter 11 of the Code. It then commenced this adversary proceeding against the Tenants League. The issue raised by this court, and addressed to the parties and briefed by the debtor in his memorandum of law is whether or not this court has jurisdiction over the League and assuming the League does not object to the jurisdiction of this court, which it has not, should the court abstain under the circumstances here presented.

## FINDINGS OF FACT

1. The League has accounted for the collection of approximately $500,000 in rents since April-May, 1979, has paid for fuel bills and other repairs with a balance of approximately $65,000 which it agrees to dispose of in accordance with this court's orders, if jurisdiction is assumed by the court.

2. The League's proviso with respect to the management and future collection of rents is that the debtor through Mehlman not be designated to operate the business since Mehlman had preceded Gutterman in ownership of the premises before the most recent conveyance of the leasehold and under Mehlman's management "the tenants' experiences were worse than with Gutterman and they do not want a recurrence of the same situation." The League will consent to a court appointed trustee or real estate management concern.

3. The debtor, when queried by the court as to whether it would consent to the procedure suggested by the League, i. e., the appointment of a trustee, assuming the Court accepted jurisdiction, unqualifiedly refused. Under the present arrangement the League is collecting approximately one-third of the rents and the debtor the balance.

4. There is a default in payment of mortgage installments, principal and interest, since December, 1979, which still prevails, the debtor having made only a token payment. The mortgagee has moved for adequate protection which matter is presently pending before this court, scheduled for hearing March 18, 1980 at 10:00 A.M.

## MEMORANDUM AND CONCLUSIONS OF LAW

This Chapter 11 case arises under the new Bankruptcy Code, having been filed on January 28, 1980. Congress granted the bankruptcy courts broad jurisdiction over all matters and proceedings that arise in connection with bankruptcy cases. 28 U.S.C. § 1471 (1979). However, 28 U.S.C. § 1471(d) provides that "a bankruptcy court, in the interest of justice" may abstain "from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." The court's decision to abstain is discretionary and not reviewable. 28 U.S.C. § 1471(d) (1979). Since there are no reported decisions under the new Code with respect to the court's exercise of discretion in abstaining where a question of state law is involved or a prior state court proceeding pending the court must examine the legislative history and pre-Code cases for guidance. It is clear that Congress intended the bankruptcy court to exercise much greater jurisdiction than previously exercised under the Act, as evidenced by the statutory language of 28 U.S.C. § 1471(b) (1979), whereby the court has original jurisdiction of "all civil proceedings arising under title 11 or arising in or related to cases under title 11."

Section 1471(d) permits the court to abstain in the "interest of justice." As stated in H.R.Rep. No. 595, 95th Cong., 1st Sess. 446 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6401, this "subsection recognizes the exigencies that arise in such cases as *Thompson v. Magnolia Petroleum*, 309 U.S. 478, [60 S.Ct. 628, 84 L.Ed. 876] (1940), in which it is more appropriate to have a State court hear a particular matter of State law." In *Thompson, supra*, the Supreme Court held that it is appropriate for a bankruptcy court to defer to a state court where the issue involves an unsettled question of state law. In enacting § 1471(d) Congress recognized that "[o]ccasions arise when determination of an issue is best left to a court that decides similar issues regu-

larly, especially if the issue is one that requires a particular expertise that the bankruptcy court does not have." H.R.Rep. No. 595, 95th Cong., 1st Sess. 51 (1978), U.S.Code Cong. & Admin. News 1978, p. 6012. Section 1471(d) codifies prior case law such as *Thompson, supra,* in which bankruptcy courts have deferred to state courts. In *Mangus v. Miller,* 317 U.S. 178, 63 S.Ct. 182, 87 L.Ed. 169 (1942), the Supreme Court stated that where there is difficulty in ascertaining the rights of the debtor under state law and in administering them in bankruptcy

> it would be an appropriate exercise of the court's jurisdiction to take suitable measures to remove those difficulties by affording the interested parties opportunity to assert their rights in the state courts and, when they are ascertained and defined, by administering the debtor's interest as the Act provides, so far as may be found practicable. *Id.,* at 185, 63 S.Ct. at 185.

A recent case before the Southern District Court of New York involved a bankruptcy court's order requiring the debtor to litigate the issue of a tenant's alleged breach of the lease in a court of competent jurisdiction. *In re Maidman,* 466 F.Supp. 278 (S.D.N.Y., 1979). In *Maidman,* a creditor instituted a foreclosure action against the debtor in a Florida state court. The state court appointed a receiver to take possession of the debtor's property and to operate his business. After a hearing and with the state court's approval the receiver entered into a short-term lease of part of the debtor's property with a lessee. The lease provided that the lessee pay a certain sum in monthly installments. The debtor then filed a Chapter XII petition whereupon the Bankruptcy Judge ordered the debtor to continue in possession subject to the lease between the receiver and the lessee and that the debtor pursue any claim for breach of lease in a state court. Upon objection by the debtor, the district court held that deferral to state court was not an abuse of discretion; since the conditions precedent which the lessee had allegedly failed to satisfy were established by the

Florida court at a hearing on the approval of the lease, that court was obviously in a better position than the bankruptcy judge to interpret the meaning of its own order. *Id.,* at 284.

The Second Circuit Court of Appeals has similarly held that the bankruptcy court could properly decline to exercise jurisdiction where a prior state court proceeding had been commenced and judgment obtained against the debtor and a question subsequently arose during the bankruptcy proceedings concerning title to property which was the subject of the prior litigation. *Gramil Weaving Corp. v. Raindeer Fabrics, Inc.,* 185 F.2d 537 (2d Cir., 1950).

This Court recognizes the intention of Congress to grant the bankruptcy court expanded jurisdiction under the Code, and acts with due deliberation and hesitancy in exercising its discretion to abstain under 28 U.S.C. § 1471(d). The case law and legislative history support the conclusion that where there has been a prior state court proceeding or issues involving state court expertise such as the landlord-tenant area, it is proper to defer to the state court.

Considering the best interest of all parties concerned, and particularly that of the debtor in confirming a plan, the facts of this case as presented to the Court, lead to the conclusion that this Court should abstain from exercising jurisdiction over the debtor-in-possession, Jewel Terrace Corp., and the Tenants League with respect to the on-going controversy between the parties. A proceeding in the state Housing Court had been commenced on May 24, 1979, against the prior owner of the premises in question, by the Tenants League, for alleged violations of the Administrative Code of the City of New York. In a series of on-going negotiations and hearings before Judge Milano, agreements were entered into between the League and the owner of the premises. The debtor purchased the property with knowledge of the tenants' strike and the state court proceedings. The Housing Court's supervision of the controversy continues to date and is further ne-

cessitated by the continuation of the differences between the tenants and the landlord-debtor. The usurpation of the jurisdiction of a state court under the circumstances here present would be in a sense an early confrontation between a newly created Bankruptcy Court and a state court, expert in the state and local law applicable in a highly specialized field. Of course, if the issue were to be presented *ab initio*, without the involvement of a court of original and competent jurisdiction, this court would have no hesitancy in presiding over and deciding the issue giving due consideration to the applicable state and municipal law. A thumbnail view of special state and municipal laws and procedures involved consists of an Article 7A Real Property Law proceeding for the appointment of a receiver; a H.P.D. (Housing Preservation Development) proceeding; rent stabilization proceedings; housing violations proceedings under City surveillance, site inspection of premises by the Judge, all of which have been invoked and are pending in a state court or city agency.

Another factor should be noted which prompts the court in its present decision. The debtor and its counsel do not appear to be acting in good faith. From the inception of this Chapter 11 filing, this court has endeavored to ascertain the raison d' être of the Tenants League. The Chapter XI–2 affidavit made no mention of a state court proceeding. Oral questioning of the debtor's attorney brought an answer of ignorance as to how the League was created and silence or claim of lack of knowledge of the pendency of a state court case. Even at the pre-trial presentation, debtor's counsel carefully evaded advising this court of the Housing Court case and left it to counsel for the League to give a complete explanation. Debtor's attorney attempts to evade the facts necessary for a proper determination by stating that the tenants "took some proceedings over there to have Mr. Gutterman_ _ _ _ _." Record, at 7, 2/7/80. Then when urged to disclose the existence of the proceeding, debtor's counsel replied, "Mr. Creditor (Attorney for the League) is here, he will tell you." Record, at 8, 2/7/80.

Debtor's counsel was and is anxious to consider the issue sub-jud one of law and asks the court to ignore the facts. Record, at 9–10, 2/7/80. He quoted and relies upon a hornbook case precedent which permitted the ouster of a state court foreclosure receiver in a Chapter X case. The principal involved in that case is precedent but not applicable here. *In re Franklin Garden Apartments, Inc.*, 124 F.2d 451 (2d Cir., 1941). The law applicable to the facts and circumstances in issue sub-jud, as understood by this court, is set forth above.

It appears that the objective of the filing of the Chapter 11 petition is not to present a plan acceptable to creditors for the paying of its obligations or to cram-down the mortgages, but rather to oust the state court of jurisdiction and dissolve the League. The balancing of equities dictates the abstention of jurisdiction by this court.

This court has no desire to increase expenses by appointment of a trustee or managing agent to collect the rents and manage the property. However, the charge by the tenants that Mehlman's only intent is to "milk" the property as they claim he did prior to the transfer of the leasehold to Gutterman, may have some credence as evidenced by the tenants' waiver of objection to jurisdiction and consent to the appointment of a trustee, the refusal of the fuel supplier to extend credit to Mehlman and the debtor's refusal to consent to the appointment of a trustee. Record, at 71, 67–69, 6–16, 2/7/80.

The application of the theory of the supremacy of the bankruptcy court, urged by the debtor in its attempt to oust the state court of jurisdiction is unwarranted. To apply that theory under the facts and circumstances of this case would be to ignore the intent of Congress under the Code, as well as do violence to the long standing and respected rule of comity.

Peculiarly, in Creditor's presentation on behalf of the Tenants' League in which he meticulously outlined the plight of the tenants with each change of ownership and management which Rosenberg, debtor's at-

torney, invited because of his claimed lack of knowledge, he carefully traced the thread of control in Mehlman regardless of ownership. He carefully outlined an insensitivity to the claims of the tenants and an irresponsible failure to live up to agreements made even during state court supervision. Hence, the refusal of the League to consent to any control, management or supervision by Mehlman.

In response, Rosenberg passed the burden of reply or explanation to Mehlman who was present at the hearing. There was no denial or point by point rebuttal by Mehlman of the tenants' charges; rather, a diversion by an attempt to account for the rents collected by him since October 1979. It appears that he collected about $115,000 per month and that for the four months he had collected about $460,000 or at least $345,000 for three months. He then produced certain checks which accounted for only about $95,000 to $100,000 for that period and Rosenberg contended he had borrowed money to make partial payment to the mortgagee. Under the Act, bootstrapping to implement a plan was not permitted in Chapter X, XI or XII cases, fresh money was the vehicle. There is not indication in the Code that this postulate should be abandoned.

How Mehlman could have expected to take over from prior owners who were in constant default on fixed charges and unable to or refused to pay for fuel for heat and is in default to the electric utility company for over $200,000 without providing fresh money is an enigma to this court. It is questionable how Mehlman could take title knowing of the state court proceeding without first applying to that court establishing his good faith and financial ability and ask that court to disband the tenants' committee it had recognized and supervised. His filing a Chapter XI petition in this court is even of deeper concern to this court. Rosenberg's belief, as well as possibly his own, that the automatic stay was applicable or that this court would summarily intervene is not consonant with the intent of the Code and the belief of this court and the applicable law as indicated.

All of the debtor's actions to this point buttressed by the undenied historical background of strained landlord-tenant relations lends much credence to the tenants' contention that this is but another attempt of Mehlman to get control, milk the property and leave the tenants without recourse.

Without casting any aspersions it is evident that all of the elements of a real estate "scam" are present. Mehlman's past history and experiences of irresponsibility as to tenants' rights, upkeep and maintenance of the property, his ownership of a second mortgage on the property and taking title in a shell corporation controlled by him, the debtor, protecting his rights against creditors and future lienors; asking to be put in control of property where the total rent rate for 3 months exceeds a million dollars and if not properly applied creditors and tenants could be irreparably harmed; all of which moves this court to a course of inquiry and caution.

The court gave the debtor an opportunity to indicate its good faith by consenting to a court appointed trustee or managing agent, but both Mehlman and Rosenberg refused. I have stated before and repeat, the debtor has been less than open and candid with this court.

▆ Under 11 U.S.C., Section 1104 of the Code, this court does not need the consent of the debtor for the appointment of a trustee or examiner. The court may appoint a trustee if the facts and circumstances so indicate during the scheduled hearing on the application of the mortgagee for adequate protection in lieu of the mortgagee's rights under an assignment of rents contained in the mortgage.

For the reasons stated and on the facts and law this court will abstain from jurisdiction in this Adversary Proceeding and relegate the parties to the state court in which a case is now pending before Hon. John Milano of the Housing Part of the Civil Court of the State of New York.

Accordingly, the complaint and counterclaim are dismissed without prejudice.

For the reasons stated above and in the interests of all parties concerned and for use particularly in the scheduled hearing on the application of the mortgagee for adequate protection and other relief set for March 18, 1980, at 10:00 A.M., the debtor is directed to file with this court, within 10 days of the date of this Order, a statement of cash flow from the commencement of the ownership and operation of the real property to date, which statement is to be verified by *George* Mehlman.

The tenants will oblige the court by filing a similar statement within the same time.

THIS IS AN ORDER.