**HARLEY HOTELS, INC.; Dutch Pantry, Inc., Plaintiffs,**

v.

**RAIN'S INTERNATIONAL, LTD., Defendant.**

**Civ.A. No. 85–1357.**

United States District Court, M.D. Pennsylvania.

Nov. 15, 1985.

Eric L. Brossman, McNees, Wallace & Nurick, Harrisburg, Pa., for plaintiffs.

Deborah A. Hughes, Harrisburg, Pa., for defendant.

## MEMORANDUM

RAMBO, District Judge.

This case is before the court on the motion of Harley Hotels, Inc. and Dutch Pantry, Inc. (hereinafter referred to as Harley, Landlord, or the Moving Party) seeking abstention from the exercise of jurisdiction over certain state law claims or, alternatively, withdrawal of this court's reference to the Bankruptcy Court of those claims. Rain's International, Ltd. (also referred to as Tenant or Debtor) opposes the motion.

*Background and Procedural History*

On December 13, 1982, the Movant and the Debtor, as landlord and tenant respectively, entered into a lease with respect to forty-one Dutch Pantry Restaurants and a commissary. The leased premises are located in nine states.

The terms of that lease, and whether or not there was any modification, are among the underlying subjects of contention in this case. Harley asserts that Rain's is in default for failure to pay rent when due, and on June 25, 1985, the landlord served a Notice of Default to that effect on the tenant. See Landlord's Exhibit A. The tenant argues, to the contrary, that the terms of the lease were modified as a result of negotiations between the parties which took place over the course of several months in late 1984 and early 1985. See Debtor's Brief at 4–6. On July 2, 1985, the debtor filed a Complaint in the Supreme Court for the State of New York, seeking declaratory relief to the effect that it was in compliance with the lease, and seeking to bar the landlord from exercising any remedy against the debtor. See Landlord's Exhibit B.

On July 29, 1985, the New York Supreme Court preliminarily enjoined the landlord from attempting to terminate the lease. The New York court's order, however, was conditioned on the tenant's posting of a security or cash bond in the amount of $400,000. See Landlord's Exhibit D. When the tenant was unable to comply with the security requirement, the preliminary injunction was partially dissolved.

See Landlord's Exhibit E. Thereupon, the landlord instituted summary proceedings to recover possession of the leased premises in Florida, Delaware and Pennsylvania, where some of the properties were located.

On August 23, 1985, the tenant filed a petition for relief under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court for this district. Subsequently, on August 28, the debtor appealed the New York Supreme Court's order dissolving the injunction, and on September 3 the debtor filed in the Bankruptcy Court a Motion to Assume Executory Contract regarding the lease. The last motion precipitated the landlord's request to this court for abstention or withdrawal of the reference.

*Discussion*

A decision concerning bankruptcy jurisdiction at this point in history must begin with a discussion of the United States Supreme Court's opinion in *Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The *Marathon* case involved the action of a debtor, Northern, seeking damages for alleged breaches of contract and warranty, and for alleged misrepresentation, coercion, and duress, against Marathon, the other party to a contract which had been entered into prior to the filing of the bankruptcy petition. *Marathon,* 458 U.S. at 56, 102 S.Ct. at 2863. Marathon moved to dismiss the action, contending that the jurisdictional provision of the United States Bankruptcy Code, § 241(a) of the Bankruptcy Act of 1978, violated the Constitution. The District Court agreed with Marathon and the Supreme Court affirmed, holding that the Bankruptcy Act unconstitutionally conferred Article III judicial power on judges who possessed neither life tenure nor the protection against salary diminution contained in Article III's "good behaviour" clause. The statute's broad grant of jurisdiction "to entertain a wide variety of cases involving claims that *may affect* the property of the estate once a petition has been filed", 458 U.S. at 54, 102

S.Ct. at 2862 (emphasis supplied), violated the constitutional requirement of an independent judiciary because these cases were not being decided by Article III judges. The Court conceded that Congress could prescribe certain tribunals to adjudicate the rights which it had created by statute. However, when the right being adjudicated was *not* one which had been created by Congress,

> substantial inroads into functions that have traditionally been performed by the judiciary cannot be characterized merely as incidental extensions of Congress' power to define rights that it has created. Rather, such inroads suggest unwarranted encroachments upon the judicial power of the United States, which our Constitution reserves for Art. III courts.

*Id.* at 84, 102 S.Ct. at 2878. The Bankruptcy Act created such an "unwarranted encroachment" because "[m]any of the rights subject to adjudication by the Act's bankruptcy courts ... [were] not of Congress' creation". *Id.* The Court continued thus:

> Indeed, the case before us, which centers upon appellant Northern's claim for damages for breach of contract and misrepresentation, involves a right created by *state* law, a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the bankruptcy court. Accordingly, Congress' authority to control the manner in which that right is adjudicated, through assignment of historically judicial functions to a non-Art. III 'adjunct', plainly must be deemed at a minimum.

*Id.* (Emphasis in original).

In response to the *Marathon* decision, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 (hereinafter cited as the 1984 Amendments or the 1984 Act). This statute provides that the district courts shall have "original and exclusive jurisdiction of all cases under Title 11",[1] and "original but not exclusive jurisdiction of all civil proceedings arising

---

1. 11 U.S.C. § 101 *et seq.* (the Bankruptcy Code).

under Title 11, or arising in or related to cases under Title 11". 28 U.S.C. § 1334.[2] Thus, jurisdiction over bankruptcy cases is vested in the District Court, which may refer those cases to the Bankruptcy Court. The District Court, may, however, withdraw that reference; alternatively, it may, and in some cases must, abstain from the exercise of jurisdiction. The movant in the present case has asked this court to exercise one of these alternatives.

■ As a preliminary matter, this court must decide whether the motion is properly directed here in the first instance. Debtor argues that before we reach the decision on the abstention and withdrawal of reference questions, the Bankruptcy Court must be given an opportunity to decide whether the Motion to Assume the lease is a "core" or "non-core" proceeding within the meaning of 28 U.S.C. § 157. However, because such a two-step approach would unnecessarily prolong the decision on the merits of Landlord's motion, this court will not require the Bankruptcy Court to make that preliminary determination. We have been directed to no case which requires that the Bankruptcy Court render the initial decision, although in several cases such a pro-

cedure was followed as a matter of discretion. *E.g., In re: Pied Piper Casuals, Inc.,* 48 B.R. 294 (S.D.N.Y.1985); *In re Ellwood City Iron & Wire Co.,* 51 B.R. 222 (W.D.Pa.1985); *see also In re Kaiser,* 722 F.2d 1574 (2d Cir.1983) (policy reasons in favor of having at least one adjudication in a case made by a judge with expertise in bankruptcy law); *but c.f. Central National Bank v. Kwak,* 49 B.R. 337 (N.D.Ohio 1985) (claim that proceeding is non-core must be made initially before bankruptcy court). In other cases, bankruptcy judges have ruled on abstention requests. *E.g., In re Franklin Computer Corp.,* 50 B.R. 620 (B.Ct.E.D.Pa.1985); *In re Ghen,* 45 B.R. 780 (B.Ct.E.D.Pa.1985); *In re Marketing Resources International,* 43 B.R. 71 (B.Ct. E.D.Pa.1984). However, none of these cases have held that *only* the bankruptcy court may rule on such motions. Indeed, several cases have required the District Court to decide them. *In re Morse Electric Co., Inc.,* 47 B.R. 234, 236 (B.Ct.N.D. Ind.1985) ("only the District Court can make the determination to withdraw the reference"); *In re Cooper,* 47 B.R. 842, 844 (B.Ct.W.D.Mo.1985) ("the abstention authority contained in Section 1334(c)(2) ... is to be exercised by the district court and not

**2.** The statute provides in full as follows:

§ 1334. Bankruptcy appeals

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11 [11 USCS §§ 101 et seq].

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [11 USCS §§ 101 et seq], or arising in or related to cases under title 11 [11 USCS §§ 101 et seq].

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 [11 USCS §§ 101 et seq] or arising in or related to a case under title 11 [11 USCS §§ 101 et seq].

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 [11 USCS §§ 101 et seq] but not arising under title 11 [11 USCS §§ 101 et seq] or

arising in a case under title 11 [11 USCS §§ 101 et seq], with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this sbusection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code [11 USCS § 362], as such section applies to an action affecting the property of the estate in bankruptcy.

(d) The district court in which a case under title 11 [11 USCS §§ 101 et seq] is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the estate. As amended Nov. 6, 1978, P.L. 95–598, Title 11, § 238(a), 92 Stat. 2667, July 10, 1984, P.L. 98–353, Title I, § 101(a), 98 Stat. 333).

28 U.S.C.S. § 1334 (The Lawyers Cooperative Publishing Co. 1977).

this court"); *In re First Landmark Development Corp.*, 51 B.R. 25, 27 (B.Ct.M.D. Fla.1985) ("[i]t is clear that a motion to withdraw the reference must be initially presented and considered by the court which issued the reference, i.e. the District Court); *see also Ram Construction Co. Inc. v. Port Authority of Allegheny County*, 49 B.R. 363 (W.D.Pa.1985) (bankruptcy judge deferred to district court on motion to abstain in the interest of avoiding inconsistencies). Since this court will ultimately rule on the merits of the landlord's motion, in the interests of expediting the process we will also address any preliminary questions raised by that motion which are necessary to its resolution. We hold, therefore, that the motion to abstain or withdraw the reference is properly before this court.

## Abstention

The 1984 Act provides that in some circumstances the district court must abstain from deciding certain claims. Alternatively, if all of the statutory conditions for mandatory abstention are not met, the court may choose to abstain voluntarily, in the interests, *inter alia*, of comity and respect for state courts.

The court must abstain under the following conditions: "[u]pon timely motion of a party in a proceeding based upon a state law claim ... related to a case under Title 11 but not arising under Title 11 or arising in a case under Title 11[,] with respect to which an action could not have been commenced" in a federal court absent bankruptcy jurisdiction. 28 U.S.C.S. § 1334(c)(2) (citations omitted). Abstention is mandated "if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction." *Id.* This provision, enacted in direct response to *Marathon*, "mandates abstention in matters that would have been filed in state court rather than federal court but for a bankruptcy filing." *State Bank of Lombard v. Chart House*, 46 B.R. 468, 471 (N.D.Ill.1985). Under this section,

abstention is mandatory when three requirements have been met: (1) the case is based upon a state law claim or cause of action which although related to a Title 11 case did not arise under Title 11 or out of a Title 11 case, (2) the case could not have been commenced in federal court absent the fact of a bankruptcy petition and, finally, (3) if the case were commenced in state court, it could be timely adjudicated.

*Id.*, citing *In re Dakota Grain Systems, Inc.*, 41 B.R. 749, 750 (B.Ct.N.D.1984).

The debtor does not contest the timeliness of the present motion, and it also concedes that no basis for federal jurisdiction over this claim would exist absent bankruptcy jurisdiction. Debtor's Brief at 23. Therefore, the second element of the test laid out in *State Bank of Lombard* is met. However, for the reasons set forth below this court finds that the matter under consideration "arises in a case" under the Bankruptcy Code and is not merely "related to a case" under the Code. Therefore, the first element of the *Lombard* test is not satisfied. Because we reach this conclusion, and therefore hold that we are not required to abstain, we need not address the third element of the *Lombard* test, that is, whether a timely adjudication could be obtained in a state forum.

The 1984 Amendments provide little guidance as to the meaning of the statutory terminology at issue here. Courts must grapple with the "jurisdictional maze constructed by Congress", *In re S.E. Hornsby & Sons Sand and Gravel Co., Inc.*, 45 B.R. 988, 990 (B.Ct.M.D.La.1985) in attempting to distinguish "civil proceedings arising under" Title 11 from civil proceedings "arising in a case" under Title 11 and civil proceedings which are merely "related to a case" under Title 11.

Proceedings "arise under" Title 11 directly

where a cause of action is one that either is one created by Title 11 or is concerned with what formerly were called 'administrative' matters in the sense that no adverse third party was involved (e.g. a

dispute between the debtor and the trustee regarding a claim to exemptions) ... (such proceedings) would not arise *but for* the Bankruptcy Code.

*In re Hornsby,* 45 B.R. at 995 (citation omitted) (emphasis in original). The *Hornsby* court cited several examples of proceedings "arising under" the Code, which establish that such matters involve claims "made under a provision of Title 11" which "have their foundation in the substantive law of the Bankruptcy Code". *Id.* at 995. By contrast, civil proceedings "arising in a case" or "related to a case" under Title 11 proceedings which concern the debtor but which are founded in substantive state law. *Id.* Thus, the present case is clearly not one which directly "arises under" the Code, since it is rooted in a state law landlord-tenant dispute.

A further distinction must be drawn, then, between those civil proceedings which, although grounded in substantive state law, "arise in a case" under the Bankruptcy Code and those proceedings which merely "relate to" a case under the Code. Some light is shed on this distinction by the jurisdictional provisions of 28 U.S.C. § 157, which establish that, in addition to "all cases under Title 11" bankruptcy judges may hear and decide "all core proceedings arising under Title 11" or "arising in a case under Title 11". 28 U.S.C.S. § 157(b)(1). A bankruptcy judge may also hear "a proceeding that is not a core proceeding but that is otherwise related to a case under Title 11", but may only submit proposed findings and conclusions in such a case. 28 U.S.C.S. § 157(c)(1). Thus, a claim which does not involve a core proceeding, but is otherwise "related to" a bankruptcy case, is somewhat more removed from the central bankruptcy case itself and, under *Marathon,* the bankruptcy court's findings in such a case may not constitutionally become final, absent consent of the parties, without district court review. § 157(c)(2).

Thus, the distinction between "core" and "non-core" proceedings is relevant to the abstention issue in that abstention is mandatory only in "related", that is, non-core

matters. The Code does not provide a conclusive definition of "core" and "non-core" proceedings. Rather, Section 157(b)(2) lists fourteen examples of matters which are considered "core". Those which are relevant here are:

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims ... for the purpose of conforming a plan under Chapter 11....;

(G) motions to ... modify the automatic stay;

(M) orders approving the use or lease of property; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship.

The dispute at issue in this case, which is a motion by the debtor to assume the lease, would appear to fit within each of these four provisions of Section 157(b)(2). However, the landlord argues that the claim at issue presents fundamentally a state law question concerning the validity of the lease, and that the debtor's efforts to characterize this claim as a core proceeding by filing the Motion to Assume Executory Contract should be seen merely as a ploy to convert the state law issue into a bankruptcy matter in order to litigate it in a federal forum. Therefore, the movant contends, despite the apparent applicability of Section 157(b)(2), the claims regarding the lease should be deemed state law claims which are merely "related to a case" under the Code.

In support of this contention, the moving party cites a line of cases in which courts have indeed refused to categorize certain proceedings as "core" although they seemed to come within the letter of Section 157(b). These courts have reasoned that although "on their face ... (such actions) would appear to be core proceedings",

28 U.S.C. § 157 cannot be construed absent consideration of the constitutional constraints which the Supreme Court, in its *Marathon* holding, noted were indigenous to Article I courts.... *Marathon*

provided a clear mandate that the jurisdiction of the bankruptcy courts to determine state law causes of action should be regarded with much circumspection lest constitutional principles be offended. *In re: Illinois-California Express, Inc.*, 50 B.R. 232 (B.Ct.Colo.1985) at 236, 237–8 (breach of contract action was not a core proceeding).

Among the earliest of these cases was *In re: Atlas Automation, Inc.*, 42 B.R. 246 (B.Ct.E.D.Mich.1984), in which the liquidation of accounts receivable was held not to constitute a core proceeding, although such a case might have seemed to come within the provisions of Section 157(b)(2) which refer to "orders to turn over property of the estate" and "proceedings affecting the liquidation of assets of the estate." The court stated that it could not ignore the legislative intent of the 1984 Act, and that because it was "doubtful that Congress intended this type of case to be tried by a bankruptcy court", the proceeding was to be considered "related to a case under Title 11" rather than a core proceeding. *Atlas*, 42 B.R. at 247. In *In re: American Energy, Inc.*, 50 B.R. 175 (B.Ct. N.D.1985), a contract action which had been styled by the Trustee as a turnover proceeding was held to constitute a "related", rather than a "core", proceeding. The court cautioned that to give a "very broad definition" to the term "related" "would transform every state-created cause of action into a federal matter merely because a debtor was involved, but this would be a jurisdictionally infirm construction". 50 B.R. at 179. *Accord, Mohawk Industries, Inc. v. Robinson Industrise, Inc.*, 46 B.R. 464 (D.Mass.1985) (debtor's breach of warranty claim was not a core proceeding); *In re: Morse Electric Co., Inc.*, 47 B.R. 234 (B.Ct.N.D.Ind.1985) (prepetition claims for breach of contract, bad faith injury to business, and negligence were "noncore" related proceedings); *In re Bokum Resources Corp.*, 49 B.R. 854 (B.Ct.N.M.1985) (prepetition contract claims were "related" proceedings although they "could be said to fall squarely within several subsections of 28 U.S.C. § 157(b)(2)"); *In re Smith-Doug-* lass, *Inc.*, 43 B.R. 616 (B.Ct.E.D.N.C.1984) (action to collect accounts receivable was not a 'core' proceeding). *See also In re: Associated Grocers of Nebraska Cooperative, Inc.*, 46 B.R. 173 (B.Ct.Neb.1985) (holding § 157(b)(2)(F), which authorized bankruptcy courts to "determine, avoid or recover preferences", unconstitutional as violative of Article III), *but see, In re: Northwest Cinema Corp.*, 49 B.R. 479 (B.Ct.D.Minn.1985) (reaching opposite conclusion).

None of the cases cited by the movant concerns the specific claim at issue in this case, namely, a Motion to Assume Executory Contract or litigation concerning the validity of a lease. The cases which do address such claims have held that they constitute core proceedings. *In re: Republic Oil Corp.*, 51 B.R. 355 (B.Ct.W.D. Wisc.1985); *see also In re: Turbowind, Inc.*, 42 B.R. 579 (B.Ct.S.D.Cal.1984) (motion to reject executory contract and complaint alleging violation of automatic stay were "matters concerning the administration of the estate" and therefore core proceedings).

Thus, this court could reasonably conclude that the claims regarding the lease constitute core proceedings because they fit within the definitions of Section 157(b)(2)(B), (G), (M), and (O). Other courts have determined the existence of core proceedings simply by noting that the claims in question came within the letter of one of the provisions of Section 157(b)(2). *E.g., In re: Marketing Resources International*, 43 B.R. 71 (B.Ct.E.D.Pa.1984) (debtor's claim for tortious interference with contract relations was a "counterclaim by the estate against persons filing claims against the estate", and therefore was a core proceeding under § 157(b)(2)(C)); *see also In re: Northwest Cinema Corp.*, 49 B.R. 479 (action to recover preference was core proceeding under § 157(b)(2)(F)). However, some of these cases have been criticized as "rather mechanical applications of the statute" which "result in a return to the much-maligned jurisdiction by ambush which prevailed prior to 1975". *In re: Bokum Re-*

*sources Corp.,* 49 B.R. at 863. Thus, the preferable approach is not simply to apply the terms of the statute but rather to analyze the nature of the underlying claim to determine whether, given the constitutional constraints on bankruptcy jurisdiction enunciated in *Marathon,* that claim should be considered a core proceeding.

■ In so analyzing the cases before them, courts have articulated in various ways their conclusion that a proceeding is 'core'. These include that the claim in question is "so logically connected" to an issue in the bankruptcy case "that judicial economy and fairness dictate they be decided in the same forum". *In re: Lombard-Wall, Inc.,* 48 B.R. 986, 991 (S.D.N.Y.1985) (debtor's claims against creditors were core proceeding under § 157(b)(2)(C)). If the claim is "intimately connected with the property of the estate", then it may be a core proceeding despite the fact that its resolution would require an adjudication based on state law. *Macon Prestressed Concrete Co. v. Duke,* 46 B.R. 727, 729–30 (M.D.Ga.1985). *See also* § 157(b)(3) ("the determination that the proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law"). In general, if there is a sufficient "nexus between the proceeding involving a state law cause of action and the bankruptcy estate", then the proceeding may be considered 'core'. *In re: Lion Capital Group,* 46 B.R. 850, 856 (B.Ct.S.D.N.Y.1985). "That Congress has redrawn the bankruptcy courts as adjunct courts subject to considerable control by Article III courts ... speaks strongly in favor of a broad definition of core proceedings". *Lion Capital,* 46 B.R. at 859.

In the case at bar, there is a substantial nexus between the proceeding involving a state law cause of action and the bankruptcy estate. Indeed, the question of the validity of the lease which underlies the Motion to Assume Executory Contract is a pivotal issue in the debtor's reorganization. The debtor states that the lease constitutes "by far the major asset" of the debtor corporation, and that its "only other asset is the inventory that it owns which is contained in the restaurants and the commissary". Therefore, the debtor argues, "[a] determination of the rights of the Debtor to the remaining term of the lease is intimately connected with its petition for reorganization" because "[u]nless Debtor prevails in its action on the lease, there will be no hope for reorganization". Debtor's Brief at 17. This court remains sensitive to the constitutional constraints which, under *Marathon,* must guide any determination of bankruptcy jurisdiction. Still, we find that, given the inseparability of this claim from the reorganization petition itself, the Motion to Assume Executory Contract must be denominated as a core proceeding under Section 157(b)(2)(B), (G), (M) and (O). Thus, because the case is not merely "related to" a case under the Bankruptcy Code, mandatory abstention does not apply.

Having concluded that abstention is not required in this case, this court must now determine whether it is advisable under that portion of the statute which provides that "nothing ... prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding" arising under the Code. 28 U.S.C. § 1334(c)(1).

The moving party contends that abstention is warranted under this provision because a question of state law is involved and a prior state court proceeding is pending. Furthermore, the landlord argues, the debtor is using the bankruptcy proceeding improperly to circumvent the state courts and to oust them of jurisdiction. Finally, the movant claims, considerations of judicial efficiency mandate abstention.

In support of its voluntary abstention argument, the movant cites a line of cases beginning with the Supreme Court's decision in *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940). This court agrees that, although *Thompson* construed a bankruptcy statute which has long since been replaced, subsequent changes in the Bankruptcy Code

have not impaired the validity of its discussion of permissive abstention. The *Thompson* court stated that

[a] court of bankruptcy has an exclusive and nondelegable control over the administration of an estate in its possession. But the proper exercise of that control may, where the interests of the estate and the parties will best be served, lead the bankruptcy court to consent to submission to state courts of particular controversies involving *unsettled questions of state property law* and arising in the course of bankruptcy administration.

309 U.S. at 483, 60 S.Ct. at 630 (emphasis added). Thus, the *Thompson* case referred to those situations in which there were unsettled questions of state law:

Neither statutes nor decisions of Illinois have been pointed to which are clearly applicable. And the difficulties of determining just what should be the decision under the law of that state are persuasively indicated by the different results reached by the two Circuit Courts of Appeal that have attempted the determination.

*Id.* at 484, 60 S.Ct. at 631. The court concluded that the federal court should abstain in such circumstances. Later cases have continued to cite *Thompson* for the proposition that abstention is advised where there are unsettled questions of state law. *E.g., In re Kimrey,* 10 B.R. 466 (B.Ct.M.D.N.C.1981). In addition, the presence of state constitutional law issues, or questions of "important state policy", would suggest that the federal courts should abstain. *In re Boughton,* 49 B.R. 312 (B.Ct.N.C.Ill.1985).

It is now a settled rule that bankruptcy abstention ... is required only if resolution of the state law question will involve the bankruptcy court in matters of substantial public import ... and only if there exists no state court precedent that either answers the precise question presented or enables the bankruptcy court to predict with reasonable certainty the conclusion that the state courts will

reach where ultimately presented with the question.

*In re Kaleidoscope, Inc.,* 25 B.R. 729, 742 (N.D.Ga.1982) (citations omitted); *see also In re Republic Oil Corp.,* 51 B.R. 355. Finally, where the state has established a specialized administrative agency for the purpose of adjudicating disputes such as the one at issue, the bankruptcy court may allow the question to be submitted to that tribunal. *In re Eastern Consolidated Utilities, Inc.,* 17 B.R. 809 (B.Ct.E.D.Pa. 1982). However, abstention in such cases is "rare". 17 B.R. at 811. *See also Matter of Jewel Terrace Corp.,* 3 B.R. 36 (B.Ct.E. D.N.Y.1980), in which the court chose to abstain from deciding a landlord and tenant matter in deference to the state court's expertise.

 The mere presence of state law issues, however, does not generally warrant abstention. While the state courts would no doubt be capable of resolving such disputes, and of course may have expertise in a particular area, there is no reason why the bankruptcy court is any less qualified, if there are no unsettled matters of state law to be resolved. Thus, many courts have expressed 'reluctance' to abstain solely because an action would involve the resolution of matters of state law. *In re Republic Oil Corp.,* 51 B.R. 355. *Republic Oil,* like the case at bar, involved a question of the validity of a lease. The court stated that while that case presented questions of state law, it also implicated strong federal interests, because the debtor was seeking to exercise its right to assume the lease, and that issue was by definition a bankruptcy matter. "[B]ankruptcy law, by its very nature, preempts certain state created rights. Adjudicating the rights to the Nevada property under the bankruptcy law is, by definition, a bankruptcy issue to be adjudicated by the bankruptcy court." *Republic Oil,* 51 B.R. at 358. *Accord, In re Ram Construction Co., Inc.,* 49 B.R. 363 (W.D.Pa.1985); *In re Tom Carter Enterprises, Inc.,* 44 B.R. 605 (C.D.Cal.1984); *In re Delorean Motor Co.,* 49 B.R. 900 (B.Ct. E.D.Mich.1985); *In re Hornsby & Sons Sand and Gravel Co., Inc.,* 45 B.R. 988.

Finally, in considering whether to abstain voluntarily, some courts have considered the extent to which abstention would affect the outcome of the bankruptcy case. "If the proceeding will have no effect on the estate, it is proper to abstain". *In re Boughton,* 49 B.R. at 316. *See also In re Ghen,* 45 B.R. 780, 782 (B.Ct.E.D.Pa.1985) (abstention ordered because outcome of proceeding would have "no bearing on the administration of the estate").

█ In the case now before this court, the movant has made no argument that the determination of rights under the lease will require resolution of unsettled matters of state law, questions as to the interpretation of state constitutions, or matters of important state policy. While the interests of comity and respect for state court processes are important ones, *Matter of Jewel Terrace,* 3 B.R. 36, they are insufficient, standing alone, to warrant abstention in this case. To the extent that this court can discern the issues in this case, it appears that the state court actions would entail relatively straightforward determinations, in the course of summary proceedings, whether the landlord is entitled to possession of the leased premises. There is no reason why such a determination may not be made by the bankruptcy court. Furthermore, as this claim concerns the major asset of the estate, its resolution may be assumed to have a grave impact on the outcome of the debtor's entire Chapter 11 petition. Therefore, this court concludes that abstention is not warranted.

Movant's other arguments may be disposed of briefly. It next claims that the debtor is using the bankruptcy proceeding improperly to oust the state courts of jurisdiction. Movant cites to this effect a legal notice which the debtor published in a Harrisburg daily newspaper, and claims that that notice stated that debtor's Chapter 11 petition was filed for purposes "other than

reorganization of a financially troubled business". Movant's Brief at 16.

The debtor's Notice, annexed as Exhibit G to Landlord's motion, states that "[t]he federal filing was precipitated by attempts on the part of Harley Hotels to evict Rains International, Ltd. from five different locations in Pennsylvania". While this court notes in passing that there is nothing inherently improper in such a statement, we leave the merits of this contention for the Bankruptcy Judge. If debtor is in fact abusing the bankruptcy process, presumably the relief it is requesting under Chapter 11 will be denied.

Finally, Movant asserts that this court should abstain in the interests of judicial economy. Movant appears to contend both that the matter now before this court will be most expeditiously addressed if we abstain and allow the state courts to proceed, and, alternatively, that even if the matter could be tried more quickly in federal court, we should abstain in light of the "overriding legislative policy, predicated on *Marathon,* of deferring to state courts for the resolution of state law causes of action". Movant's Brief at 17. Finally, Movant claims that the likelihood of an appeal of any decision by the bankruptcy court, or even of a trial *de novo* in this court, would cause substantial and unnecessary delay in achieving a final resolution of this case.

Courts have stated that in exercising their discretion with regard to the abstention question they are "guided by what will best assure an economical and expeditious administration of the debtor's estate".[3] In some cases, these interests have been cited in support of a decision to abstain, *e.g. In re Franklin Press, Inc.,* 46 B.R. 522, 523 (B.Ct.S.D.Fla.1985); *In re Ghen,* 45 B.R. at 781. In other cases, those interests have been held to include "the congressional intention to place the adjudication of all bankruptcy proceedings in one forum", and have thus compelled the federal court to

---

**3.** Although at least one court has ordered abstention even when it was "possible" that the proceeding "could be tried more quickly in the district court", *In re Smith-Douglass, Inc.,* 43 B.R. at 618, a close reading of that case reveals that in fact abstention was ordered to avoid adjudicating the constitutionality of the statute, which would have caused considerable delay in the resolution of the claim at issue. *Id.*

decline to abstain. *In re Delorean Motor Co.*, 49 B.R. at 908; *In re Ram Construction Co.*, 49 B.R. at 366; *In re Hornsby*, 45 B.R. at 996.

This court too is guided by concerns for efficiency and a speedy resolution of the issues in question, and finds that those concerns militate clearly in favor of its decision not to abstain. The debtor has raised several issues concerning the nature of the actions filed in the New York and Florida courts, contending, *inter alia*, that service was not properly effected, that the state courts are severely backlogged, and that debtor will be unable to meet the bonding requirements necessary to obtain an adjudication on the merits of the underlying lease. See Debtor's Brief at 24–27. This court expresses no .opinion as to the merits of those contentions, because we conclude that the mere fact that proceedings are pending in several state courts poses a substantial problem in terms of efficiency. Since there is no constitutional barrier to the bankruptcy court's adjudication of this case, and since the concerns of comity are insufficient to warrant abstention, we see no reason why this case should not be resolved in one forum, rather than forcing the debtor to defend several state court actions simultaneously. Resolution of this particular claim in the single bankruptcy forum is particularly appropriate in light of the importance of the claim to the debtor's estate as a whole. Finally, there may certainly be appeals to this court or a trial *de novo* on some matters. These are necessary to legitimate the bankruptcy court's jurisdiction under *Marathon*, and they do not unduly impede the efficiency of the process to the same degree as would several simultaneous state court adjudications.

In sum, none of the arguments advanced by the moving party in support of voluntary abstention persuades this court to exercise that choice. The motion to abstain under § 1334(c)(1) will therefore be denied.

*Withdrawal of the Reference*

■ Finally, having declined to abstain, this court must address Movant's alternative request for relief, which is the withdrawal of the reference in this matter. By order dated July 26, 1984, the Chief Judge of this district referred all cases under, in, or related to the Bankruptcy Code to the Bankruptcy Judge of this district. Misc. No. 84–203. This court has the statutory power to "withdraw, in whole or part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown". 28 U.S.C. § 157(d). Movant contends that because the underlying issue of the validity of the lease must constitutionally be decided by an Article III court, this court should exercise its power to withdraw the reference.

The withdrawal of reference provision, which requires that cause be shown, has been construed to create

> a presumption that Congress intended to have bankruptcy proceedings adjudicated in the bankruptcy court unless rebutted by a contravening policy. The presumption may be overcome only by an overriding interest based on a finding by the court that the withdrawal of reference is *essential* to preserve a higher interest than that recognized by Congress and is narrowly tailored to serve that interest.

*In re Delorean Motor Co., Inc.*, 49 B.R. at 912 (citation omitted) (emphasis in original). The *Delorean* court noted that the 1984 Amendments "heighten the presumption in favor of adjudicating all bankruptcy matters in the bankruptcy court", because

> the bankruptcy courts are subordinate adjuncts to the district courts.... The degree to which bankruptcy judges are controlled by the Article III judges under the amendments 'avoids any violation of the separation-of-powers privileges that underlie the Article III protections to ensure an independent judiciary'.

*Id.* (Citations omitted). The court proceeded to reject the contention that withdrawal was required because of the presence of state law issues. *Id.* A similar result was reached in *In re White Motor Corp.*, 42 B.R. 693 (N.D.Ohio 1984). In that case, after a review of the pertinent legislative history, the court rejected a mo-

tion to withdraw the reference, noting that to permit "the Bankruptcy Court to conduct core proceedings ... is a sensible course of action dictated by the language and history of the Amendments, principles of sound judicial administration, and the facts of this case". 42 B.R. at 705–6.

This court too must deny the motion to withdraw. Having established that the Motion to Assume Executory Contract is a core proceeding which, furthermore, should be decided by the bankruptcy court in the interest of sound judicial administration and expedient disposition of all the claims concerning the debtor's estate, we find no constitutional infirmity in the reference to that court of this matter.

In sum, the motion to abstain under 28 U.S.C. 1334(c) or to withdraw the reference under 28 U.S.C. 157(d) will be denied.