64 F.3d 658
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In Re: Peter A. MORABITO, Debtor.
William J. FRIEDMAN, Plaintiff-Appellant,
v.
Peter A. MORABITO, Defendant-Appellee.
 No. 94-2542.
 United States Court of Appeals, Fourth Circuit.
 Argued July 11, 1995.
Decided Aug. 25, 1995.
 
 Before WILKINSON and WILLIAMS, Circuit Judges, and SHEDD, United States District Judge for the District of South Carolina, sitting by designation.
 ARGUED: Jack Sherwood Rhoades, CAKE, RHOADES & SCHEWE, P.C., Alexandria, VA, for Appellant. Edward W. Cameron, ODIN, FELDMAN & PITTLEMAN, P.C., Fairfax, VA, for Appellee.
 E.D.Va.
 AFFIRMED.
 OPINION
 PER CURIAM:
 
 
 1
 This bankruptcy appeal involves a claim for contribution by Peter A. Morabito against William J. Friedman for the pro rata recovery of a settlement paid by Morabito to Alleco, Inc., a/k/a/Alleco Financial Corporation (Alleco). The primary issue on appeal is whether a debtor's claim for contribution against a co-guarantor that arises after the debtor files for bankruptcy is a core proceeding under 28 U.S.C. Sec. 157(b)(1) (1988). The bankruptcy court and the district court below held that, under the circumstances of this case, a suit for contribution between co-guarantors is a core proceeding. We agree and, for the reasons stated below, affirm the judgment of the district court.
 
 I.
 
 2
 Morabito and Friedman were guarantors[1] of a $1 million loan made in January 1989 by Alleco to Volpe Constructors, Inc. (Volpe). In September of 1989, after Volpe defaulted on the loan, Alleco filed suit in state court against Volpe and the guarantors.[2] Morabito and Alleco reached an initial settlement,[3] but Morabito defaulted after paying $350,000 of the $700,000 settlement amount. Alleco returned to state court and on September 3, 1991, obtained a judgment against Morabito for $1,462,345.
 
 
 3
 Morabito filed for Chapter 11 bankruptcy on September 25, 1991. Alleco filed a claim on its $1.46 million judgment against Morabito's bankruptcy estate and again negotiated with Morabito to compromise its claim against him. On December 20, 1991, Morabito filed a motion seeking the bankruptcy court's approval of a proposed consent order which authorized Morabito to pay Alleco an additional $225,000 plus interest in complete compromise of Alleco's $1.46 million judgment. The bankruptcy court did not approve this proposed consent order. In 1993, after two years of further negotiations,[4] Morabito and Alleco reached a final compromise and settlement of the $1.46 million judgment under which Morabito agreed to pay an additional $125,000 and Alleco assigned its rights under the guaranty to Morabito. On April 26, 1993, the bankruptcy court in Morabito's Chapter 11 proceedings issued a consent order approving the settlement.[5]
 
 
 4
 Meanwhile, in December of 1991 Morabito, believing he had reached a settlement with Alleco, sued Friedman in the bankruptcy court for contribution on the guaranty, alleging the claim was an asset of his bankruptcy estate and that the suit was a core proceeding under bankruptcy law. The complaint prayed for contribution equal to one-half of the settlement amount "already paid to and/or owed to Alleco by [Morabito]."[6] (J.A. 6.) Friedman moved to dismiss Morabito's con tribution claim in January 1992, arguing that the bankruptcy court had no jurisdiction because a claim for contribution is not a core proceeding under 28 U.S.C. Sec. 157(b)(2). In July of 1992, Friedman filed a third-party complaint joining the estate of Martin Schor (Schor) as a third-party defendant in its capacity as guarantor on the loan. Schor moved to dismiss in October of 1992, arguing Morabito's claim for contribution was not yet ripe under Virginia law because Morabito had not yet paid the settlement to Alleco. Friedman joined this motion.
 
 
 5
 After a December 1992 hearing, the bankruptcy court denied the motions to dismiss. During the May 1994 trial, the parties stipulated that Morabito had paid the remaining $125,000 in final settlement of Alleco's claim in August 1993. The bankruptcy court found Morabito was entitled to equitable contribution and ordered Friedman to pay $158,333, which was one-third of the settlement amount. On appeal, the district court affirmed "for reasons stated from the bench." (J.A. 321.)
 
 
 6
 Friedman appeals the district court's order. We apply the same standards as did the district court to review the bankruptcy court's decision on appeal; that is, we review conclusions of law de novo and findings of fact under the clearly erroneous standard. River Place East Hous. Corp. v. Rosenfeld (In re Rosenfeld), 23 F.3d 833, 836 (4th Cir.1994); Canal Corp. v. Finnman (In re Johnson), 960 F.2d 396, 399 (4th Cir.1992); Fed. Bankr.R. 8013. For reasons stated below, we affirm the ruling of the district court.
 
 II.
 
 7
 Friedman first argues that the bankruptcy court lacked jurisdiction to grant Morabito relief on the theory that an action for contribution on a guaranty is not a "core proceeding" under 28 U.S.C. Sec. 157. A bankruptcy court has jurisdiction to hear two types of cases: "core proceedings" under 28 U.S.C. Sec. 157(b)(1) & (2), and non-core "related proceedings" under Sec. 157(b)(1) & (c). A bankruptcy court has jurisdiction to issue a final order only in core proceedings.[7] In noncore related proceedings, on the other hand, a bankruptcy court can only make recommendations to the district court. While the bankruptcy court has jurisdiction over the case, it does not have jurisdiction to issue a final order in a non-core proceeding. 28 U.S.C. Sec. 157(c)(1). Here, when the bankruptcy court denied Friedman's motion to dismiss, it found that the contribution suit was a core proceeding.
 
 
 8
 Friedman disagrees with the bankruptcy court, contending that the contribution suit was not a core proceeding because it is a cause of action created by state law. Carr v. Michigan Real Estate Ins. Trust (In re Michigan Real Estate Ins. Trust), 87 B.R. 447, 453 (E.D.Mi.1988) ("when the cause of action is itself a creature of state law, ... the bankruptcy court may not constitutionally enter a [final] judgment"). We disagree. The Carr decision relied upon by Friedman conflicts with Sec. 157(b)(3), which plainly states that the "determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law." A proceeding "is core ... if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir.1987). The Supreme Court has explained that a core proceeding may not involve "a traditional contract action arising under state law." Thomas v. Union Carbide Agricultural Prods. Co., 473 U.S. 568, 584 (1985) (emphasis added). A suit for contribution, however, is not a contract action, but rather "is based on the broad principles of equity." Wiley N. Jackson Co. v. City of Norfolk, 87 S.E.2d 781, 784 (Va.1955). We also note that at least one leading bankruptcy treatise cautions that many courts misunderstand the nature of core proceedings and warns that it is simplistic to hold that no cause of action based on state law can be a core proceeding. 1 Collier on Bankruptcy p 3.01[c] at 3-54, 3-55 & n. 155 (15th ed.).
 
 
 9
 Here, Friedman admits that Morabito's contribution claim is an asset of his bankruptcy estate. Morabito's right to contribution is property of his estate that, under the bankruptcy code, he must collect as a part of its administration. See Sec. 157(b)(2)(A) (administration of the estate) & (O) (matters affecting liquidation of the estate). We find a sufficient nexus between the contribution action and Morabito's bankruptcy estate to consider the contribution action a core proceeding because his inability to pay a settlement on the $1.46 million judgment was the reason he filed for bankruptcy, and presumably recovery of the contribution amount represents a major asset of Morabito's bankruptcy estate. Harley Hotels, Inc. v. Rain's Int'l, Ltd., 57 B.R. 773, 780 (M.D.Pa.1985) (suit to recover on a lease was core proceeding because lease was major asset of debtor and thus indicated "a substantial nexus between the proceeding involving a state law cause of action and the bankruptcy estate"). Under these circumstances, we hold that the bankruptcy court correctly found that Morabito's suit for contribution was a core proceeding under Sec. 157(b)(1) & (2).
 
 III.
 
 10
 Friedman next puts forward what essentially amounts to a ripeness argument, arguing that the bankruptcy court should have granted his motion to dismiss because Morabito did not have a valid claim for contribution at the time of the December 9, 1992, hearing on Friedman's motion to dismiss. His argument focuses on the fact that, at the time of the motion hearing, Morabito had not obtained a release from Alleco or paid more than his pro rata share of the settlement with Alleco. The bankruptcy court later allowed Morabito to amend his claim to reflect that, by the time of trial, he had paid more than his pro rata share. Morabito contends that this amendment cured any defect in the pleadings and therefore the denial of the motion to dismiss is a moot issue, and that, considering the equities involved, the bankruptcy court correctly ruled in Morabito's favor on his claim for contribution. We agree with Morabito and, for the reasons stated below, find no error in the bankruptcy court's rulings.
 
 
 11
 In Virginia, the right to obtain equitable contribution arises only after a co-guarantor has paid more than his pro-rata share of the debt, or when the original obligation has been paid "in full satisfaction of the debt" or settled in a manner that "secures a release" of all co-guarantors' liabilities to the obligor. Sacks v. Tavss, 375 S.E.2d 719, 721-22 (Va.1989) (emphasis in original); Houston v. Bain, 196 S.E. 657, 662 (Va.1938) (summarizing the equitable right to contribution in Virginia).[8]
 
 
 12
 Friedman argues Morabito had no cause of action for contribution when he filed suit in December 1991, and thus the suit should have been dismissed under Sacks, because the $350,000 Morabito paid was less than his pro rata share of the obligation and because Morabito did not have a full release from Alleco, either at the time he filed his complaint or by the time of the December 1992 hearing on Friedman's motion to dismiss.[9] Both parties admit, however, that by the time of the May 18, 1994, trial, Morabito had a right to contribution on the settlement of Alleco's claim.[10] At the end of the May 1994 trial, Morabito moved to amend his pleadings to conform to the evidence indicating that he had reached a compromise and settlement with Alleco and had made full payment of $475,000 thereon. The bankruptcy court granted this motion, and later adopted proposed findings of fact and law to that effect. Thus, the alleged defect in the pleadings upon which Friedman based his motion to dismiss was cured by the amendment during trial.[11] Therefore, we must consider whether the bankruptcy court properly allowed the amendment to the pleadings, because if amendment was proper, the question of whether the bankruptcy court erred by denying the motion to dismiss becomes moot.
 
 
 13
 We review disposition of a motion to amend for abuse of discretion. Deasy v. Hill, 833 F.2d 38, 40 (4th Cir.1987), cert. denied, 485 U.S. 977 (1988). Morabito argues the bankruptcy court did not abuse its discretion in allowing the amendment because Fed. Bankr.R. 7015 allows a bankruptcy court to freely give leave to amend "when justice so requires." Rule 7015 also states:
 
 
 14
 If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's ... defense upon the merits.
 
 
 15
 A bankruptcy court should deny a motion to amend "only 'where the motion has been unduly delayed and where allowing the amendment would unduly prejudice the non-movant.' " Harman v. First Am. Bank of Md. (In re Jeffrey Bigelow Design Group, Inc.), 956 F.2d 479, 482 (4th Cir.1992) (quoting Deasy, 833 F.2d at 40). Although the motion was made at the conclusion of the trial, Rule 7015 allows amendment "at any time, even after judgment." Fed. Bankr.R. 7015. The amendment did not unduly prejudice Friedman because the contribution claim had been ripe for nine months by the time of trial, and he fully defended his rights at trial. The amendment to the pleadings was purely technical; it did not alter the theory of the case and raised no new claims or issues. See Harman, 956 F.2d at 482-83 (even amendments that alter the theory of the case are often allowed when they add no new cause of action and do not prejudice other parties).
 
 
 16
 Furthermore, equitable considerations come into play when determining whether amendment will promote the ends of justice. The equities in this case clearly and overwhelmingly favor Morabito. Morabito obtained Friedman's release from the $1.46 million debt to Alleco because the settlement released the obligations owed by all of the guarantors to Alleco. Morabito obtained full satisfaction of the debt as to all co-guarantors in August 1993, well before the May 1994 trial against Friedman. Four years earlier, Morabito had defended the guarantors' rights in Alleco's suit on the Volpe loan at a time when Friedman was out of the country. Friedman obtained additional benefits from Morabito's continued negotiations with Alleco, which reduced the total liability on the $1.46 million dollar judgment from $575,000--the amount of the proposed compromise and settlement when Morabito filed suit against Friedman in 1991--to $475,000--the amount of the final compromise and settlement approved by the bankruptcy court in 1993. Throughout the complicated proceedings and numerous bankruptcies arising out of Volpe's failure to pay the $1 million loan guaranteed by the parties, Friedman has taken the role of an artful dodger and continues in that role by attempting to avoid paying his share of the settlement amount, even though that amount is significantly less than his liability would have been without Morabito's efforts. We do not see how justice would be served by dismissing this action on a possible technicality, when Morabito's right to contribution from his co-guarantors was clear at the time of trial. We therefore affirm the bankruptcy court's denial of the motion to dismiss, its allowance of the amendment, and its determination that Morabito raised a valid claim for contribution at trial.
 
 IV.
 
 17
 Finally, Friedman argues the bankruptcy court erred by excluding as hearsay Friedman's testimony that he was fraudulently induced to sign the guaranty. We review the bankruptcy court's evidentiary rulings, which are entitled to substantial deference, for abuse of discretion, United States v. Russell, 971 F.2d 1098, 1104 (4th Cir.1992), cert. denied, 113 S.Ct. 1013 (1993), and its factual findings for clear error, In re Johnson, 960 F.2d at 399, with due regard given to the bankruptcy court's opportunity to judge the credibility of the witnesses. Friedman argued at trial that Lettice and Volpe fraudulently obtained his signature and transferred it to a guaranty other than the one that he signed. If supported by sufficient evidence, this allegation would raise a valid defense in an action to recover under the guaranty. However, Friedman did not allege that Morabito or Alleco was involved in the purported fraud, nor did he call Lettice as a witness or offer any proof of fraud other than his own testimony, nor did he deny signing a guaranty with the same terms as the one sued upon. Friedman's only contention was that the guaranty he signed had a different co-guarantor.[12] This theory would not alter Friedman's liability on the guaranty, as under the terms of the guaranty all of the co-guarantors were jointly and severally liable for Volpe's entire debt to Alleco, including interest, costs, and attorney's fees. The bankruptcy court found that Friedman signed the guaranty sued upon and that there was no basis to show the signature was a product of fraud. This finding is supported by the expert testimony at trial showing that Friedman's signature was genuine, and the lack of any evidence (other than Friedman's hearsay testimony) that Lettice defrauded him. Therefore, we conclude that the bankruptcy court did not err in finding that the guaranty was not based on fraud.
 
 V.
 
 18
 For the reasons stated above, we affirm the judgment of the district court.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 The other guarantors were William J. Lettice, III (the president of Volpe), Mary W. Lund (his wife), and Martin H. Schor
 
 
 [2]
 Friedman, who was out of the country, was dismissed without prejudice from the suit because Alleco was unable to serve him with process. In 1990, Alleco obtained summary judgment against Volpe, Lettice, Lund, and Schor's estate for $1,266,764. Morabito was not included in Alleco's motion for summary judgment and continued to defend against his liability in Alleco's suit
 
 
 [3]
 Under the terms of this initial settlement, Alleco agreed that, upon Morabito's payment of the $700,000 settlement amount, it would assign to Morabito (1) its rights under the guaranty against Friedman and (2) its judgments against Volpe, Lettice, and Lund
 
 
 [4]
 Meanwhile, sometime in 1992, Alleco instituted its own bankruptcy proceedings
 
 
 [5]
 On July 29, 1993, the bankruptcy court in Alleco's bankruptcy proceedings authorized Alleco to compromise and settle its claim with Morabito based on the same settlement agreement
 
 
 [6]
 Although the record on appeal is far from complete, it appears that at the time Morabito filed his contribution claim one guarantor, Schor, was dead and the remaining two guarantors, Lettice and Lund, were insolvent. Apparently, Friedman had been living in Africa since shortly after he signed the guaranty, and when Morabito learned that Friedman was visiting relatives in Texas in December 1991, he promptly filed his complaint against Friedman and was able to serve him with process before he returned to Africa
 
 
 [7]
 The Supreme Court in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 87 (1982), addressed the constitutional limitations placed on a bankruptcy court's jurisdiction, and held the Bankruptcy Reform Act of 1978 unconstitutional because it vested Article III judicial power in Article I courts. The Court essentially determined that a bankruptcy court can only make a final determination and issue dispositive orders in "core" matters arising in or under Title 11 of the Bankruptcy Code. Id. at 70, 87-88 & n. 40. In response, Congress established the core proceeding requirement of 28 U.S.C. Sec. 157
 
 
 [8]
 In an equitable action for contribution, the pro-rata share of each co-guarantor's debt is based on the number of solvent guarantors at the time the debt is apportioned. Houston, 196 S.E. at 662. Although the obligation is apportioned pro rata among the solvent guarantors, insolvency must be proved by the evidence and not merely alleged. In re Porter, 50 B.R. 510, 517 (Bankr.E.D.Va.1985)
 
 
 [9]
 However, Friedman admitted at trial that during the motion to dismiss hearing he may not have presented sufficient facts to show that Morabito had not paid more than his pro rata share of the judgment at the time he filed his complaint in December 1991. Although a trial court may, based on the pleadings alone, rule on a motion to dismiss for failure to state a claim upon which relief may be granted, Fed.R.Civ.P. 12(b)(6), Friedman's statement indicates that the bankruptcy court may have considered matters beyond the pleadings in denying the motion to dismiss. The motion to dismiss hearing was not transcribed, and therefore there is no evidence in the record before us to show that the bankruptcy court erred in denying the motion to dismiss the contribution claim. Appellant is responsible for including all relevant parts of the proceedings or transcripts in the record for appeal. Fed. R.App. P. 10(b)(2) & (3); cf. Powell v. Estelle, 959 F.2d 22, 26 (5th Cir.) (accepting district court's findings when transcript of hearing which could have revealed court's error not included in record on appeal), cert. denied, 113 S.Ct. 668 (1992); Turnbull v. Wilcken, 893 F.2d 256, 258 (10th Cir.1990) (same)
 Moreover, we note that if the bankruptcy court relied on matters outside the pleadings in denying the motion to dismiss, that motion would be treated as a motion for summary judgment under Fed.R.Civ.P. 56(c). If this were the case--a matter we cannot tell from the record--we could not address this issue, as we have recently held that we "will not review, under any standard, the pretrial denial of a motion for summary judgment after a full trial and final judgment on the merits." Chesapeake Paper Products Co. v. Stone & Webster Engineering Corp., 51 F.3d 1229, 1237 (4th Cir.1995) (footnote omitted).
 
 
 [10]
 Morabito paid the $125,000 to settle Alleco's judgment on the guaranty in August 1993, and by the terms of the final settlement agreement released all of the guarantors from their liability to Alleco. Although Friedman admits that Morabito's contribution claim was ripe by the time of trial, he contends he had a valid defense to the contribution claim because he was defrauded into signing the guaranty. We address this argument in pt. IV, supra
 
 
 [11]
 Had the bankruptcy court granted the motion to dismiss, the relief granted would have been dismissal without prejudice of Morabito's claim. After Morabito paid the settlement to Alleco in August 1993, he would then have been able to file another suit for contribution against Friedman, and the parties would have gone through the entire process again unless, of course, Friedman was again unavailable for service of process
 
 
 [12]
 Specifically, he argued that the guaranty he signed had a signature block for "Mr. Lund," Mary Lund's father, in the place of Mary Lund's signature block. Friedman claimed he had investigated Mr. Lund's finances and believed Mr. Lund would have been able to pay the debt on the guaranty if required. Even if this were so, Mr. Lund would have had the same right as Morabito to seek contribution from Friedman on the guaranty