Michelle L. VIEIRA, as Trustee for the Estate of Worldwide Wholesale Lumber, Inc. (d/b/a Veracor Wood Products International), Plaintiff,

v.

AGM, II, LLC, Defendant.

C.A. No. 2:06–3111–PMD.

United States District Court, D. South Carolina, Charleston Division.

Jan. 22, 2007.

Richard Lee Tapp, Jr., Nexsen Pruet Jacobs Pollard and Robinson, Charleston, SC, Suzi Grigg, Nexsen Pruet Jacobs and Pollard, Columbia, SC, for Defendant.

## ORDER

DUFFY, District Judge.

This matter is before the court upon Defendant AGM, II, LLC's ("Defendant"

or "AGM") Motion to Apply Standing Order of Reference. Specifically, AGM seeks to refer the case before this court to the United States Bankruptcy Court for the District of South Carolina. For the reasons set forth herein, the court grants Defendant's motion.

## BACKGROUND

On April 12, 2006, several of Worldwide Wholesale Lumber, Inc.'s (d/b/a Veracor Wood Products International) ("Debtor") creditors filed an involuntary petition against Debtor for relief under Chapter 7 of the Bankruptcy Code. Michelle L. Vieira ("Vieira," "Plaintiff," or "Trustee"), Plaintiff, is serving as Trustee for Debtor. Debtor previously operated a business headquartered in Mt. Pleasant, South Carolina, which consisted of purchasing and importing plywood from foreign countries and reselling the plywood on the domestic market. AGM entered into various financial agreements with Debtor whereby AGM provided financing to Debtor based in Debtor's accounts receivable and inventory.

In her capacity as Trustee, Vieira brought suit against AGM in this court on October 31, 2006 and listed the following causes of action: (1) Breach of Fiduciary Duty to Other Creditors—Violation of the Trust Fund Doctrine; (2) Breach of Fiduciary Duty to the Debtor; (3) Constructive Trust; and (4) Accounting. In the complaint, Plaintiff alleges that prior to the bankruptcy filing, AGM inserted Orlando Figeroa as a director onto Debtor's Board of Directors. (Compl.¶ 7.) Plaintiff asserts that Figeroa asserted control over the Board and "made certain decisions including the decision not to seek Chapter 11 protection which, in turn, resulted in the

involuntary filing under Chapter 7 of the Bankruptcy Code." (Compl.¶ 7.) The complaint further states, "The Trustee is further informed and believes that AGM, through its agents, amended the Debtor's corporate charter to provide that an outside director has a veto power over the Debtor prior to the filing of the bankruptcy." (Compl.¶ 8.) Plaintiff also alleges that in January of 2006, AGM inserted Mark Kaplan into Debtor's business to operate and oversee daily operations and that Kaplan, who was employed as a consultant by AGM or AGM's agents, directed which payables to pay and when such payments would be made. (Compl.¶ 10.)

The case of *In re: Worldwide Wholesale Lumber, Inc., d/b/a Veracor Wood Products International*, No. 06–01499–jw,[1] is currently pending in the United States Bankruptcy Court for the District of South Carolina. In addition, a civil action captioned *Tianjin Jinnan Dist. Tongmei Timber Co. Ltd. and Wenan Xinda Wood Industry Co. Ltd v. Worldwide Wholesale Lumber, Inc. (d/b/a Veracor Wood Products International) and AGM II, LLC*, No. 9:06–00516–PMD, was filed on February 21, 2006 in this court. On July 12, 2006, the court issued an Order of Abstention in *Tianjin*, staying the case until resolution of the bankruptcy petition.

On December 4, 2006, AGM filed a Motion to Apply Standing Order of Reference, seeking to refer the case before this court to the United States Bankruptcy Court for the District of South Carolina. In its motion, AGM states, "[S]ince this action both arises in and is related to the Bankruptcy Case, this Court's standing order of reference should be applied to refer this action to the Bankruptcy Court."

---

1. In this Order, the court will refer to the case pending before the Bankruptcy Court as the "Bankruptcy Case."

(AGM's Mot. to Apply Standing Order of Reference at 7.) AGM asserts that referring this case to the Bankruptcy Court will allow Vieira's allegations to "be adjudicated in the context in which they arose," AGM's Motion for Allowance of Claim and to Compel Payment Thereof, which was filed on June 13, 2006 in the Bankruptcy Case. (AGM's Mot. to Apply Standing Order of Reference at 4.)

Vieira opposes AGM's Motion to Apply Standing Order of Reference, stating the "only connection" between the action in this court and the Bankruptcy Case is that Plaintiff is the Trustee and AGM is a creditor of Debtor. (Pl.'s Resp. in Opp'n to Mot. to Apply Standing Order of Reference at 3.) Vieira further argues "this litigation does not include any causes of action arising under the Bankruptcy Code" and that even if the reference is applied, this court would still ultimately have to hear the issues "since they are non-core issues with the facts being decided by a jury." (Pl.'s Resp. in Opp'n to Mot. to Apply Standing Order of Reference at 3–4.)

### ANALYSIS

The procedural rules regarding referral of bankruptcy cases to bankruptcy court are set forth in 28 U.S.C. § 157. Subsection (a) states, "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). The United States District Court for the District of South Carolina has a standing order of reference for these cases: "Pursuant to 28 U.S.C. § 157(a), the Court hereby refers to the Bankruptcy Judges for this District all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to a case under Title 11." Local Civil Rule 83.IX.01, D.S.C.

The United States District Court for the District of Maryland addressed a motion for referral to the bankruptcy court in *Travelers Insurance Co. v. Goldberg*, 135 B.R. 788 (D.Md.1992). In that case, the plaintiffs loaned money to different partnerships, and the partnerships later filed for bankruptcy. *Id.* at 789–90. The plaintiffs brought suit in district court, seeking to recover from both individual and corporate defendants on various state law theories, including breach of promissory note and tortious interference with contract. *Id.* at 790. The defendants then sought to have the case referred to bankruptcy court, arguing that the case was related to the pending bankruptcy cases and that a referral promoted judicial economy. *Id.*

■ The *Travelers Insurance* court provided the framework for analyzing a motion to refer a case to bankruptcy court:

> In deciding whether to refer this case, the Court must first determine (1) whether this action is sufficiently "related to" the bankruptcy cases to permit a referral under § 157(a), and (2) whether and to what extent a referral is permissible at all in light of the plaintiffs' jury demand. If, after these issues are resolved, the Court finds that it has the discretion to grant defendants' motion [to refer the case], it must still decide whether a referral would be of practical benefit to the administration of the action.

*Id.* The court applies this framework in analyzing AGM's Motion to Apply Standing Order of Reference.

### A. "Related to" Jurisdiction

■ In *New Horizon of N.Y., LLC v. Jacobs*, 231 F.3d 143 (4th Cir.2000), the Fourth Circuit described the test for de-

termining whether a civil case is "related to" a bankruptcy case:

> As the Court stated in *Celotex [Corp. v. Edwards*, 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995)], the related to language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simply proceedings involving the property of the debtor or the estate; however, related to jurisdiction cannot be limitless. A civil case filed in a district court is related to a case in bankruptcy if the outcome in the civil case *could conceivably have any effect on the estate being administered in bankruptcy* ... if the out-come would alter the debtor's rights, liabilities, options, or freedom of action (positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*New Horizon*, 231 F.3d at 150–51 (internal quotation marks and citations omitted). "[A] related to case need not necessarily be against the debtor or his property[,]" and the fact that some common issues of fact exist "between a civil proceeding and a controversy involving a bankruptcy estate" does not necessarily mean the civil proceeding is related to the bankruptcy case. *New Horizon*, 231 F.3d at 151 (internal quotation marks and citation omitted). If the civil case "could conceivably have any effect on the estate being administered in bankruptcy," the civil case is related to the bankruptcy case. *Id.*

■ This court first notes that the case *sub judice* involves a bankruptcy estate and the estate's claims against one of its creditors. Furthermore, the facts at issue in AGM's Motion for Allowance of Claim and to Compel Payment Thereof likely overlap with the facts in Vieira's causes of action against AGM in this court. This court is of the opinion that the outcome of this civil proceeding could have an effect on the estate being administered in bankruptcy, especially since "'related to' jurisdiction is to be 'broadly interpreted.'" *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.)*, 86 F.3d 364, 372 (4th Cir.1996). At the minimum, Vieira's claims against AGM could alter the ultimate distribution of property among creditors, and some courts have found that such an effect indicates the civil proceeding is related to the bankruptcy case. *See In re A.H. Robins*, 86 F.3d at 372; *see also Elscint, Inc. v. First Wis. Fin. Corp. (In the Matter of Xonics, Inc.)*, 813 F.2d 127, 131 (7th Cir.1987) (noting a dispute is "related to" the bankruptcy when "it affects the amount of property available for distribution or the allocation of property among creditors"); *Premium of America, LLC v. Sanchez (In re Premium Escrow Servs., Inc.)*, 342 B.R. 390, 396 (Bankr.D.D.C.2006) ("Prior to the confirmation of a debtor's plan of reorganization, an action to recover funds for the estate easily satisfies the criteria for 'related to' jurisdiction because the recovery of such funds increases the size of the estate and improves the potential for and quantity of distributions to creditors."). Accordingly, this court finds Vieira's claims against AGM are sufficiently related to the Bankruptcy Case to warrant referral. Pursuant to the District of South Carolina's Local Civil Rule 83.IX.01, this case should be referred to the Bankruptcy Court.[2]

### B. Plaintiff's Jury Demand

■ In her action against AGM, Vieira demands a jury trial. As AGM notes, "[t]he Bankruptcy Court does not, without

---

**2.** The court does not base its holding solely on Local Civil Rule 83.IX.01, as Local Civil Rule 1.02 states this court can suspend or modify any local civil rule "[f]or good cause shown."

the consent of each party to an action, have jurisdiction to conduct a jury trial." (AGM's Mot. to Apply Standing Order of Reference at 6.) The Fourth Circuit's opinion in *Official Committee of Unsecured Creditors v. Schwartzman (In re Stansbury Poplar Place, Inc.)*, 13 F.3d 122 (4th Cir.1993) discusses this issue. In *Stansbury*, several entities, including Stansbury Poplar Place, Inc., filed for bankruptcy pursuant to Chapter 11. *Id.* at 123. The Official Committee of Unsecured Creditors (the "Committee") was appointed to represent unsecured creditors, and the Committee brought suit against several officers, directors, insiders, and shareholders of the debtors to recover fraudulent conveyances and preferential transfers. *Id.* When the defendants answered the complaints, they demanded a jury trial and filed motions for the district court to withdraw the reference on the grounds that the bankruptcy court could not conduct the jury trials. *Id.* On the other hand, the Committee argued that defendants were not entitled to a jury trial because (1) it requested an equitable accounting, (2) the bankruptcy court could conduct a jury trial, and (3) even if the bankruptcy court could not conduct the jury trial, the bankruptcy court was the better place to address pre-trial matters. *Id.* at 123–24.

In addressing the Committee's arguments, the Fourth Circuit first noted that the Supreme Court, in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), held that "the Seventh Amendment entitled persons who had not submitted claims against a bankruptcy estate to a jury trial when they were sued by the bankruptcy trustee to recover an allegedly fraudulent monetary transfer," despite the fact that fraudulent conveyance actions are core proceedings. *Stansbury*, 13 F.3d at 124. The Committee attempted to distinguish *Granfinanciera* because an equitable accounting was

essential to resolve its claims against the defendants. *Id.* The Fourth Circuit declined to distinguish *Granfinanciera* on those grounds, however, noting that the Committee's request for an equitable accounting did not "require" that the defendants "be denied their constitutional right to a jury trial on the fraudulent conveyance claims." *Id.* at 125.

The Committee then contended that any defendant "who ha[d] either filed a claim in one or more of the bankruptcy actions in this case or [was] listed on Schedule A.1 as a creditor holding a priority claim for wages, salary and commissions, ha[d] waived his jury trial right in all other jointly-administered actions." *Id.* In addressing this argument, the Fourth Circuit examined the Supreme Court's opinion in *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990). In *Langenkamp*, the Supreme Court stated that a creditor "triggers the process of allowance and disallowance of claims, thereby subjecting himself to the bankruptcy court's equitable power," when the creditor files a proof of claim against a bankruptcy estate. 498 U.S. at 44, 111 S.Ct. 330 (internal quotation marks omitted). While the creditor is not entitled to a jury trial when an action alleging preferential transfers is brought against the creditor after the creditor has filed a claim, the creditor is entitled to a jury trial on such an action if he or she has not submitted a claim against the bankruptcy estate. *Id.* at 44–45, 111 S.Ct. 330. The Fourth Circuit ultimately rejected the Committee's argument and held that only the defendants "who have filed a proof of claim against one of the Stansbury estates has lost his right to a jury trial, and even then only with regard to that particular estate." *Stansbury*, 13 F.3d at 126.

■ After determining the defendants were entitled to a jury trial, the Fourth Circuit then addressed the issue of whether the bankruptcy court had the authority to conduct the jury trial. *Id.* The court stated, "[B]ankruptcy judges are not authorized to conduct jury trials; where the Seventh Amendment provides the right to a jury trial in a core proceeding in bankruptcy, it must take place in the district court." *Id.* at 128.[3] The fact that the bankruptcy court could not conduct the jury trial did not mean, however, that the district court had to immediately withdraw the reference:

> Our holding that bankruptcy judges are not authorized to conduct jury trials does not mean that the bankruptcy court immediately loses jurisdiction of the entire matter or that the district court cannot delegate to the bankruptcy court the responsibility for supervising discovery, conducting pre-trial conferences, and other matters short of the jury selection and trial. The decision of whether or not to withdraw the reference immediately is frequently more a pragmatic question of efficient case administration than a strictly legal decision. While the bankruptcy court may be uniquely qualified to conduct pre-trial matters in some core proceedings, in other cases such a referral would be a futile detour, requiring substantial duplication of judicial effort.

*Id.* The Fourth Circuit then remanded the case so the district court could determine when to withdraw the reference prior to the jury trial. *Id.* at 129. Thus, this court does not read *Stansbury* to require denial of AGM's Motion to Apply Standing Order of Reference simply because Vieira has demanded a jury trial.

## C. Other Factors

■ The court acknowledges that a relevant factor in determining whether this court should refer the case *sub judice* to the Bankruptcy Court is whether Vieira's claims against AGM are core or non-core. *See Travelers Ins. Co.*, 135 B.R. at 791. AGM argues that Vieira's claims against AGM "were compulsory counterclaims to AGM's Claim Allowance Motion, and that the parties had consented to litigate them in the Bankruptcy Court as part of the Claim Allowance Motion." (AGM's Mot. to Apply Standing Order of Reference at 3–4.) If Vieira's causes of action against AGM are counterclaims, then her causes of action will likely be deemed core proceedings. Pursuant to 28 U.S.C. § 157, the following are core proceedings: (1) "allowance or disallowance of claims against the estate ...", (2) "counterclaims by the estate against persons filing claims against the estate," and (3) "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." 28 U.S.C. § 157(b)(2). Although unclear whether Vieira is arguing all of her claims against AGM are non-core, she clearly argues her

---

**3.** It should be noted that 28 U.S.C. § 157 was amended effective October 22, 1994 to provide that if the right to a jury trial applies, the bankruptcy court may now conduct the jury trial if the bankruptcy judge is specially designated by the District Court and all parties to the proceeding have expressly consented. *Samson v. Ward (In re Ward)*, 184 B.R. 253, 254 n. 1 (Bankr.D.S.C.1995). Indeed, section 157(e) states, "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." This subsection does not help resolve the motion before this court, however, as the parties have not consented to a jury trial in the Bankruptcy Court.

causes of action for breach of fiduciary duty are non-core. (Pl.'s Resp. in Opp'n to Mot. to Apply Standing Order of Reference at 2.)

In the case *sub judice,* however, the Bankruptcy Court should make this determination. The court simply does not have enough information to determine whether Vieira's causes of action against AGM are compulsory counterclaims to AGM's Motion for Allowance of Claim. In any event, even if Vieira's claims against AGM are non-core, the Bankruptcy Court still had jurisdiction so long as the claims are related to the Bankruptcy Case. *See Friedman v. Morabito (In re Morabito),* 64 F.3d 658, 1995 WL 502909, *2 (4th Cir.1995) (unpublished table decision) ("A bankruptcy court has jurisdiction to hear two types of cases: 'core proceedings' under 28 U.S.C. § 157(b)(1) & (2), and non-core 'related proceedings' under § 157(b)(1) & (c). A bankruptcy court has jurisdiction to enter a final order only in core proceedings. In noncore related proceedings, on the other hand, a bankruptcy court can only make recommendations to the district court.").

### D. Summary

Despite the fact that Vieira demands a jury trial, this court grants AGM's Motion to Apply Standing Order of Reference. Vieira's claims against AGM are related to the Bankruptcy Case; as a result, this proceeding is referred to the Bankruptcy Court pursuant to Local Rule 83.IX.01. *See* Local Civil Rule 83.IX.01, D.S.C. Furthermore, the Bankruptcy Court is the proper place to determine whether Vieira's causes of action against AGM are core or non-core. Though the parties disagree as to whether the appropriate court is the Bankruptcy Court or the District Court, they do agree it is preferable to have one court

hear the entire dispute between Vieira and AGM. Granting AGM's motion will place the entire matter, save the jury trial itself, before the Bankruptcy Court. Lastly, although the Bankruptcy Court cannot conduct a jury trial without the parties' consent, *Stansbury* stated that its holding "does not mean that the bankruptcy court immediately loses jurisdiction of the entire matter or that the district court cannot delegate to the bankruptcy court the responsibility for supervising discovery, conducting pretrial conferences, and other matters short of the jury selection and trial." *Stansbury,* 13 F.3d at 128. Accordingly, this court grants AGM's Motion to Apply Standing Order of Reference.[4]

### CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that AGM's Motion to Apply Standing Order of Reference is **GRANTED.**

**AND IT IS SO ORDERED.**

---

4. AGM filed a Motion to Dismiss on December 4, 2006. As the court refers the entire case to the Bankruptcy Court, this pending motion is also referred.